# Illinois Official Reports

## Appellate Court

---

### *People v. Guzman*, 2014 IL App (3d) 090464

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JORGE A. GUZMAN, Defendant-Appellant. |
| District & No. | Third District<br>Docket Nos. 3-09-0464, 3-10-0802 cons. |
| Opinion filed<br>Rehearing allowed<br>Opinion filed | January 23, 2014<br>March 5, 2014<br>December 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order denying defendant's motion to withdraw his guilty plea was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 08-CF-2481; the Hon. Richard C. Schoenstedt, Judge, presiding. |
| Judgment | No. 3-09-0464, Affirmed.<br>No. 3-10-0802, Reversed and remanded. |

| Counsel on Appeal | Andrew J. Boyd, of State Appellate Defender's Office, of Ottawa, for appellant. |

James Glasgow, State's Attorney, of Joliet (Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice McDade specially concurred, with opinion.
Justice Holdridge concurred in part and dissented in part, with opinion.

## OPINION

¶ 1    Defendant Jorge Guzman was indicted for the offense of aggravated possession of stolen firearms (720 ILCS 5/16-16.1(a)(1) (West 2008)) and entered a negotiated guilty plea. On appeal, defendant argues that the trial court erred in denying his motion to withdraw his guilty plea because he was not informed by the trial court or trial counsel of potential immigration consequences of his conviction (No. 3-09-0464). He also appeals from the dismissal of his postconviction petition, claiming that we should remand for further proceedings because postconviction counsel failed to include timely allegations that defendant would not have pled guilty if he had been properly informed of the immigration consequences (No. 3-10-0802). We affirm the order denying defendant's motion to withdraw his plea in appeal No. 3-09-0464. We reverse the order dismissing defendant's postconviction petition and remand for further second stage proceedings in appeal No. 3-10-0802.

¶ 2    At the plea hearing, the State provided a factual basis in which it was shown that defendant was in possession of stolen firearms. The trial court then asked defendant, "[I]s that what happened?" Defendant responded, "[N]ot really." The court recessed to allow defendant to talk to counsel. When the hearing continued, the court asked if defendant agreed to the provided factual basis. Defendant said that he did and that he was mistaken in his earlier answer. The court accepted defendant's plea.

¶ 3    The case then proceeded directly to sentencing. Prior to rendering the sentence, the trial court asked defendant if he was a United States citizen, and defendant stated that he was a resident. Specifically, the following discussion took place:

"THE COURT: Is he a U.S. citizen?

DEFENDANT: Yes, sir.

THE COURT: You are?

DEFENDANT: I'm sorry. I'm a permanent legal resident."

¶ 4    The court sentenced defendant to four years' imprisonment with the recommendation that he be placed in the impact incarceration program.

¶ 5    On March 6, 2009, defendant filed a motion to withdraw his guilty plea. The written motion contained no arguments in support of his request. At the hearing, counsel argued that defendant's guilty plea was involuntary because the trial court failed to admonish him under section 113-8 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-8 (West 2008)) of the legal immigration consequences he faced if he pled guilty:

> "MS. TISDALE [defense counsel]: *** [T]he language of 725 ILCS 5/113-A [*sic*], is that if you are not a citizen of the United state, [*sic*] you're hereby advised that the–that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, [Y]our Honor. And that admonishment was not given to Mr. Guzman.
>
> Your Honor, it's [Y]our Honor's discretion as to whether he should be allowed to withdraw his plea of guilty or not. And seeing as though both of the cases that have been presented to [Y]our Honor, it isn't clear as to what the interpretation of that statute actually is. One case thinks it's instructionary, and another case thinks it's mandatory.
>
> I would ask that Mr. Guzman be allowed to withdraw his plea of guilty."

The court denied defendant's motion after finding that the admonishments were directory, not mandatory. Defendant filed a notice of appeal from that order on June 11, 2009 (No. 3-09-0464).

¶ 6    On appeal, defendant argued that the trial court erred in failing to inform him of the possible immigration consequences of his guilty plea under section 113-8 of the Code (725 ILCS 5/113-8 (West 2008)) and that trial counsel was ineffective for the failing to inform him of those same consequences. On December 20, 2011, we reversed the trial court's decision as to the constitutional argument and found that trial court's failure to inform defendant as to the immigration consequences of his plea rendered his plea involuntary in light of *Padilla v. Kentucky*, 559 U.S. 356 (2010). *People v. Guzman*, 2011 IL App (3d) 090464 (withdrawn Nov. 27, 2012).

¶ 7    Meanwhile, on July 12, 2010, defendant, through private counsel, filed a petition to vacate the judgment of conviction pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401(a) (West 2010)). That petition alleged that neither the trial court nor trial counsel advised defendant as to the potential deportation consequences of his plea and that removal proceedings against defendant had been initiated as a result of his plea. The petition further claimed that trial counsel's failure to advise defendant of the immigration consequences of the guilty plea constituted ineffective assistance of counsel.

¶ 8    The trial court dismissed the petition, noting that claims of ineffective assistance of counsel are not cognizable in section 2-1401 petitions. The court granted counsel leave to file a postconviction petition.

¶ 9    That same day, counsel filed a petition for postconviction relief, alleging that (1) neither the trial court nor trial counsel informed defendant of the immigration consequences of his plea, (2) removal proceedings against defendant had begun as a result of the plea, (3) trial counsel's failure to advise defendant of the immigration consequences constituted ineffective assistance of trial counsel, and (4) defendant therefore did not enter his plea knowingly or voluntarily. The State filed a motion to dismiss claiming, among other things, that the petition lacked the necessary evidentiary affidavits in support of defendant's claims.

- 3 -

¶ 10    At the second-stage hearing on October 7, 2010, defense counsel presented the court with an affidavit from defendant stating that the statements in the petition were true and accurate and that neither the trial court nor defendant's attorney advised defendant that he might be deported if he pled guilty to the felony charge. The trial court denied the petition, finding that there was no evidence in the record that defendant would have gone to trial had he been informed of the potential immigration consequences of his plea. Defendant filed a notice of appeal from that order on October 8, 2010 (No. 3-10-0802).

¶ 11    On October 21, 2010, defense counsel submitted an amended postconviction petition. The amended petition included another affidavit stating that if defendant had been informed of the immigration consequences of his plea, he would not have pled guilty. The affidavit was signed by defendant but was not notarized. No further proceedings were conducted by the trial court.

¶ 12    On March 28, 2012, the Illinois Supreme Court allowed the State's petition for leave to appeal in case No. 3-09-0464. *People v. Guzman*, No. 113730 (Mar. 28, 2012). In defendant's supreme court brief, he admitted that the record in case No. 3-09-0464 was silent as to whether trial counsel actually discussed the potential immigration consequences of a guilty plea with him. Defendant therefore stated that he would not pursue the ineffective assistance claim on direct appeal. However, defendant noted that he had filed a postconviction petition arguing that trial counsel was ineffective and that the matter was currently on appeal before the appellate court.

¶ 13    The supreme court remanded the case and directed us to consider whether the trial court's failure to admonish defendant pursuant to section 113-8 of the Code should result in the defendant being allowed to withdraw his guilty plea. *People v. Guzman*, No. 113730 (Ill. Oct. 17, 2012) (supervisory order). In its supervisory order, the court also stated that "[t]he appellate court may, in its discretion, choose to consolidate this appeal on remand with the defendant's appeal of the dismissal of [his] postconviction petition, currently pending in the Appellate Court as People v. Guzman, No. 3-10-0802." On the supreme court's advice, we consolidated appeal Nos. 3-09-0464 and 3-10-0802 and set a schedule for supplemental briefing by the parties. We also entered a minute order withdrawing our original opinion.

¶ 14    On January 23, 2014, we issued an opinion granting defendant relief on direct appeal based on his ineffective assistance of trial counsel claim. We dismissed the appeal in No. 3-10-0802, concluding that the postconviction issue was moot. *People v. Guzman*, 2014 IL App (3d) 090464, ¶ 37. Justice Holdridge specially concurred and discussed the merits of defendant's postconviction appeal. *Id*. ¶¶ 49-56 (Holdridge, J., specially concurring). In response, the State filed a petition for rehearing, asserting that this court should address the ineffective assistance of trial counsel claim in the postconviction appeal rather than on direct appeal because defendant conceded in his supreme court brief that the issue "is based on matters outside the record, and is therefore more properly raised in a post-conviction petition." We granted rehearing on March 3, 2014.

¶ 15    On appeal from case No. 3-09-0464, defendant now contends that (1) his motion to withdraw his guilty plea should have been granted because the trial court failed to admonish him of the possible immigration consequences of his guilty plea pursuant to section 113-8 of the Code, and (2) the trial court's failure prejudiced defendant where the court was aware that defendant was not a United States citizen and was subject to deportation following entry of the plea. On appeal in case No. 3-10-0802, defendant argues that postconviction counsel's assistance was unreasonable because counsel failed to submit an affidavit in the initial petition

stating that defendant would not have pled guilty if he had been informed of the immigration consequences of his plea. He also claims that postconviction counsel was ineffective because he never argued that there was a viable defense, failed to move to file a successive petition and failed to withdraw the notice of appeal filed on October 8, 2010.

¶ 16                                       APPEAL NO. 3-09-0464

¶ 17                                        Guilty Plea Appeal

¶ 18                           Failure to Admonish Under Section 113-8

¶ 19      A trial court's decision on a motion to withdraw a guilty plea is reviewed under the abuse of discretion standard. *People v. Pullen*, 192 Ill. 2d 36, 39-40 (2000). Defendant first argues that the trial court's failure to advise him in accordance with section 113-8 of the Code, concerning the potential effect of a guilty plea and conviction, renders his guilty plea involuntary.

¶ 20      Section 113-8 provides:

>      "Before the acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:
>
>      'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113-8 (West 2008).

¶ 21      Here, the trial court found the above admonishments to be directory, as opposed to mandatory. Our supreme court addressed this question in *People v. Delvillar*, 235 Ill. 2d 507 (2009). Specifically, the court stated that immigration consequences are collateral consequences. As such, the failure to admonish a defendant of potential immigration consequences does not affect the voluntariness of the plea. *Delvillar*, 235 Ill. 2d at 521-22.

¶ 22      At the hearing on defendant's motion to withdraw his plea, defendant's sole basis for requesting relief was grounded in the incorrect belief that the section 113-8 admonishments were mandatory. Defense counsel argued that the language of section 113-8 advised that a defendant should be admonished as to the consequences of deportation. However, counsel acknowledged that it was within the court's discretion as to whether defendant should be allowed to withdraw his plea. Under the circumstances, the trial court was simply left to decide whether the section 113-8 admonishments were mandatory.[1] Because the trial court's failure to admonish defendant of potential immigration consequences under section 113-8 does not by itself call into question the constitutional voluntariness of the guilty plea (*Delvillar*, 235 Ill. 2d at 521-22), we will not disturb the court's decision denying defendant's motion to withdraw his plea (*Pullen*, 192 Ill. 2d at 39-40).

¶ 23      Alternatively, defendant argues that we should reverse the trial court's denial of his motion to withdraw his plea on the ground that he suffered prejudice as a result of the trial court's failure to admonish him as to potential immigration consequences.

---

[1]Ultimately, the trial court correctly determined that the admonishments were merely directory. See *Delvillar*, 235 Ill. 2d at 521-22.

¶ 24    In *Delvillar*, our supreme court determined that a trial court's failure to admonish a defendant pursuant to section 113-8 requires reversal where "real justice has been denied or if the defendant has been prejudiced by the inadequate admonishment." *Delvillar*, 235 Ill. 2d at 522. The court noted that a defendant could show prejudice by demonstrating that (1) he was subject to potential immigration penalties, or (2) that he would have pleaded not guilty had he been admonished of those potential consequences. Specifically, the court stated:

> "Again, it is defendant who must demonstrate that he has been prejudiced by the improper admonishment. [Citation.] In this case defendant has not done so. In his motion to withdraw his guilty plea and at argument on the motion, defendant failed to demonstrate that he was subject to any potential immigration penalties or that he would have pleaded not guilty had he been admonished of those potential consequences. After having answered 'yes' to the question whether he was a United States citizen in a previous hearing, defendant made no attempt to prove his resident alien status to the court in the subsequent hearing on his motion." *Delvillar*, 235 Ill. 2d at 522.

¶ 25    The *Delvillar* case was pending before the supreme court at the time defendant's motion was heard in the trial court. The record reveals, however, that defendant failed to show, in his motion or argument, that any of those consequences discussed in *Delvillar* have been or would be applied to him. For example, defendant's motion simply stated that "[d]efendant wishes to withdraw his guilty plea." It fails to offer any basis why he should be allowed to do so. Nowhere in the motion does defendant state that he was subject to potential immigration penalties or that he would not have pled guilty if the court had properly admonished him of the immigration consequences. In addition, hearings were held on May 21, 2009, and June 11, 2009. At no time during those proceedings did defense counsel inform the trial court that defendant was actually subject to any potential immigration penalties. Since we must assess the motion as presented to the trial court, we find no abuse of discretion in the court's denial of defendant's motion to withdraw the plea. See *People v. Smith*, 253 Ill. App. 3d 948 (1993).

¶ 26                              APPEAL NO. 3-10-0802
¶ 27                              Postconviction Appeal
¶ 28            Prejudice Resulting From Trial Counsel's Ineffective Assistance
¶ 29    In his postconviction appeal, defendant argues that postconviction counsel was ineffective by failing to properly present his claim for ineffective assistance of trial counsel. Among other things, defendant asserts that postconviction counsel failed to include allegations in the initial postconviction petition that defendant would not have pled guilty if he had been properly informed of potential immigration consequences.

¶ 30    The right to postconviction counsel is derived from the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2010)). Thus, the petitioner is only entitled to the level of assistance provided for by the Act, that is, a reasonable level of assistance. *People v. Suarez*, 224 Ill. 2d 37 (2007). The reasonable assistance that postconviction counsel is required to provide is outlined in Rule 651(c), which states that counsel must (1) consult with the defendant to ascertain his contentions of constitutional deprivations, (2) examine the record of the trial proceedings, and (3) make any amendments to the petition necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); *People v. Milam*, 2012 IL App (1st) 100832, ¶ 28. Under Rule 651(c), there is no requirement that

postconviction counsel must amend a defendant's *pro se* petition or scour the record to uncover claims that were not raised by the defendant. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). However, Rule 651(c) requires that postconviction counsel must make any amendments to the petition necessary to adequately present the defendant's contentions. *Id.* In other words, postconviction counsel must shape the defendant's claims into appropriate legal form. *Milam*, 2012 IL App (1st) 100832, ¶ 33.

¶ 31 When a petitioner is denied reasonable assistance of counsel, it is nearly impossible to determine if the petitioner's postconviction claims have merit. See *People v. Turner*, 187 Ill. 2d 406, 415 (1999); *People v. Shortridge*, 2012 IL App (4th) 100663, ¶ 16. Thus, if a trial court dismisses a postconviction petition and the appellate court determines that the petitioner was denied reasonable assistance of counsel, the proper remedy is to reverse the trial court's dismissal of the petition and remand for further proceedings. See *Turner*, 187 Ill. 2d at 416-17; *Shortridge*, 2012 IL App (4th) 100663, ¶ 16.

¶ 32 To succeed on an ineffective assistance of trial counsel claim, postconviction counsel must demonstrate that trial counsel's performance was deficient and that the defendant suffered prejudice as a result of counsel's unprofessional conduct. *Strickland v. Washington*, 466 U.S. 668 (1984). Where deportation is a clear consequence, a criminal defense attorney is required to advise his or her client that the pending charges may carry a risk of adverse immigration consequences. *Padilla*, 559 U.S. at 371. "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring in the judgment, joined by Stevens, J.)).

¶ 33 To show prejudice in the plea context, the defendant must demonstrate that but for trial counsel's error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 62; see generally *Strickland*, 466 U.S. at 694. As the Supreme Court stated in *Padilla*, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

¶ 34 Defendant contends that he was unaware of the risk of deportation when he accepted the State's plea offer and that had he known of the risk it would have been reasonable for him to plead not guilty. In support of his claim that it would have been reasonable to plead not guilty, defendant alleges that (1) his conviction at trial was not certain because evidence at the guilty plea hearing indicated that he had a plausible defense and (2) he has family living in the United States.

¶ 35 These claims are sufficient to establish prejudice. First, a trial would provide defendant the opportunity to contest the State's evidence. See *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012) (prejudice found where, but for counsel's error regarding deportation, defendant could have presented evidence at trial to remove crime from class of mandatory deportation). Moreover, defendant's family ties and bonds to the United States provide a rational basis to reject a plea deal. See *Padilla*, 559 U.S. at 368 ("[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence" (internal quotation marks omitted)); *State v. Sandoval*, 249 P.3d 1015 (Wash. 2011) (*en banc*) (finding prejudice to lawful resident who was not informed of deportation consequences based on strong ties to the United States). As a result, defendant might have been willing to risk a lengthier prison sentence in exchange for even a slight chance of prevailing at trial and thereby

avoiding deportation. Counsel's deficient performance deprived defendant of a chance to avoid deportation if he had prevailed at trial. Thus, defendant was prejudiced by his attorney's failure to advise him of the risk of deportation.

¶ 36    To support an ineffective assistance of counsel claim, a defendant is not required to prove deportation to establish prejudice. As noted above, the defendant is merely required to show that he would not have pleaded guilty had he known about the potential immigration consequences and that it would have been rational for him to reject the plea deal and go to trial. *Padilla*, 559 U.S. at 372. In other words, the defendant need only show a reasonable probability that trial counsel's failure to advise him of the potential immigration consequences of a guilty plea induced him to plead guilty. *People v. Hughes*, 2012 IL 112817, ¶ 63. He does not need to demonstrate, in addition, that he was deported[2] or that deportation proceedings have been initiated. The prejudice occurs at the time the guilty plea is entered as a result of the incomplete information provided by counsel, not when the immigration consequence occurs.

¶ 37                   Ineffective Assistance of Postconviction Counsel

¶ 38    Turning to the merits of defendant's argument on appeal, defendant's postconviction counsel failed to adequately present defendant's claim for ineffective assistance of counsel. When he filed defendant's first postconviction petition, postconviction counsel failed to present any evidence suggesting that the defendant would not have pled guilty had he been informed of the immigration consequences of the plea. At the second stage hearing, postconviction counsel submitted an affidavit stating that trial counsel failed to inform defendant of the immigration consequences of his plea. However, the affidavit did not include a statement demonstrating prejudice: that defendant would not have pled guilty had he been informed of the immigration consequences. The trial court dismissed the petition on that basis.

¶ 39    Postconviction counsel subsequently filed an amended postconviction petition with an affidavit signed by the defendant stating that he would have pled guilty had he been informed of the immigration consequences of his plea. The amended affidavit satisfied the prejudice prong of an ineffective assistance claim. However, postconviction counsel failed to file a motion to withdraw the notice of appeal before filing the amended petition. When a notice of appeal has been filed, the trial court loses jurisdiction over the matter appealed. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011). Thus, the trial court lacked jurisdiction to consider the amended petition because notice of appeal of the dismissal of the original postconviction petition had been filed.

¶ 40    Here, prejudice was a necessary element of defendant's ineffective assistance of trial counsel claim and postconviction counsel did not submit a timely affidavit to establish that prong of the *Strickland* test. Defendant's counsel failed to make all amendments necessary to ensure that the petition was proper so that it could adequately present defendant's claims under Rule 651(c). See Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Thus, counsel provided unreasonable assistance. We reverse the order dismissing defendant's petition and remand for the appointment of new counsel to amend the petition as necessary and provide the proper verified affidavit. See *Shortridge*, 2012 IL App (4th) 100663, ¶ 16; *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 19.

---

[2]In response to a request for deportation status, appellate counsel informed this court that defendant was deported in December of 2010.

¶ 41                                                    CONCLUSION

¶ 42          The order of the circuit court of Will County denying defendant's motion to withdraw his guilty plea is affirmed. Defendant's appeal from the judgment of the circuit court denying his postconviction petition is reversed and remanded for further proceedings.

¶ 43          No. 3-09-0464, Affirmed.

¶ 44          No. 3-10-0802, Reversed and remanded.

¶ 45          JUSTICE McDADE, specially concurring.

¶ 46          I concur outright with that portion of Justice Lytton's opinion that affirms the denial of defendant's motion to withdraw his plea (No. 3-09-0464). I specially concur with the remaining portion of Justice Lytton's opinion that reverses the dismissal of defendant's amended post-conviction petition (No. 3-10-0802).

¶ 47          I also write separately to address Justice Holdridge's position that the "trial court's failure to admonish the defendant regarding the immigration consequences of his guilty plea rendered the defendant's plea involuntary." *Infra* ¶ 62.

¶ 48                                              Justice Lytton's Opinion

¶ 49          Justice Lytton expressly holds defendant was prejudiced by his plea counsel's failure to advise him of the risk of deportation. *Supra* ¶ 35. The basis for the majority's prejudice finding is that defendant: (1) would not have pled guilty if informed of the immigration consequences, (2) had a plausible defense (whether defendant was actually in possession of the stolen firearms), and (3) had family living in the United States. *Supra* ¶ 34. Because these three combined facts make a substantial showing of a constitutional violation, which is the standard applied at second stage postconviction proceedings (*People v. Coleman*, 183 Ill. 2d 366, 382 (1998)), Justice Lytton concludes that postconviction counsel was unreasonable in failing to adequately present them. *Supra* ¶¶ 38-40. I agree.

¶ 50          I write separately to address what I believe to be a fourth, unasserted, prejudicial fact–that being defendant was facing mandatory deportation. See 8 U.S.C. § 1229a(3) (2006). As explained by the United States Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356 (2010):

              "In 1996, Congress also eliminated the Attorney General's authority to grant discretionary relief from deportation, [citation], an authority that had been exercised to prevent the deportation of over 10,000 noncitizens during the 5-year period to 1996, [citation]. Under contemporary law, if a noncitizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Id*. at 363-64.

¶ 51          Because defendant in the instant case informed the trial court, without contradiction, that he was a legal permanent resident and because he was convicted of an aggravated felony, his deportation could not be canceled by the United States Attorney General (8 U.S.C. § 1229a(3) (2012)), meaning his deportation was mandatory.

¶ 52    The mandatory nature of deportation raises the stakes for a defendant when deciding whether to accept or reject the State's plea offer. Stated another way, we are no longer merely talking about potential immigration consequences. Instead, we are talking about guaranteed immigration consequences. Under such circumstances, the right to remain in the United States may be more important to the defendant than any potential jail sentence. As explained by the Third Circuit Court of Appeals:

> "For the alien defendant most concerned with remaining in the United States, especially a legal permanent resident, it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that \*\*\* carries presumptively mandatory removal consequences. Just as the threat of [removal] may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does, [citation], the threat of removal provides an equally powerful incentive to go to trial if a plea would result in removal anyway." (Internal quotation marks omitted.) *United States v. Orocio*, 645 F.3d 630, 645 (3d Cir. 2011), *abrogated on other grounds by Chaidez v. United States*, 568 U.S. ___, ___, 133 S. Ct. 1103, 1107 (2013).

¶ 53    The above authority illustrates the inherent prejudice that arises for a defendant attempting to decide whether or not to accept a plea offer when plea counsel fails to inform him of mandatory/guaranteed immigration consequences. Stated another way, when plea counsel fails to inform his client of mandatory/guaranteed immigration consequences, I would find that prejudice is presumed. Under such a policy, the defendant would not have to make an actual showing of prejudice. Again, I believe the mandatory/guaranteed nature of the immigration consequences changes the playing field. While I acknowledge that here on appeal (No. 3-10-0802) defendant has not addressed this precise failure of postconviction counsel, I find it extremely relevant in light of the above authority. Thus, I believe postconviction counsel was also unreasonable in failing to adequately present the fact that defendant was facing mandatory deportation.

¶ 54              Justice Holdridge's Special Concurrence in Part and Dissent in Part

¶ 55    Justice Holdridge writes separately that reversal of the trial court's order denying defendant's motion to withdraw his guilty plea is warranted because the trial court failed to admonish defendant. *Infra* ¶ 62. While he acknowledges the "collateral consequences" holding espoused in *Delvillar*, he finds "[t]hat premise was squarely rejected by the United States Supreme Court in *Padilla*." *Infra* ¶ 65. While I personally find this reasoning convincing, I would note that this specific argument has been dismissed by our supreme court in *People v. Carrera*, 239 Ill. 2d 241, 256 (2010).

¶ 56    The defendant in *Carrera* argued that "*Padilla* rejected the characterization of deportation as a collateral consequence of a guilty plea." *Carrera*, 239 Ill. 2d at 255. In dismissing this argument the Carrera court stated:

> "*Padilla* declined to classify deportation as either a direct or a collateral consequence. As this court has explained, collateral consequences are ' "not related to the length or nature of the sentence imposed on the basis of the plea," ' while direct consequences are 'limited to the *penal* consequences of that plea, *i.e.*, the consequences that relate to the sentence imposed on the basis of [that] plea.' (Emphasis in original.)

[Citation.] Even in light of *Padilla*, we cannot say that deportation is a consequence that relates to the sentences imposed on the basis of that plea." *Carrera*, 239 Ill. 2d at 256.

¶ 57    Justice Holdridge correctly points out that *Carrera* did not involve the precise factual scenario found in *Delvillar*. *Infra* ¶ 72. *Delvillar* examined the impact of a trial court's failure to admonish a defendant of potential immigration consequences. *Infra* ¶ 72. *Carrera* addressed whether a defendant facing deportation proceedings was "imprisoned in the penitentiary" for purposes of the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2006)). While I acknowledge this factual distinction, I believe it is one without consequence.

¶ 58    The outcome in both *Carrera* and *Delvillar* depended entirely on the same substantive legal analysis–whether deportation is a collateral or a direct consequence of a defendant's conviction. Stated another way, the supreme court employed the same legal analysis (collateral v. direct) when determining whether the defendants in *Carrera* and *Delvillar* were entitled to relief. The factual scenarios in both cases were just the backdrop for the identical legal analysis.

¶ 59    The *Delvillar* court expressly held:

> "Immigration consequences are collateral consequences. [Citations.] As such, the failure to admonish a defendant of potential immigration consequences does not affect the voluntariness of the plea." *Delvillar*, 235 Ill. 2d at 521.

Thus, until the supreme court changes course and finds that immigration consequences are direct consequences, we are foreclosed from finding a plea involuntary on the basis of a trial court's faulty immigration admonishments. While Justice Holdridge is correct that the question of whether *Padilla* required this change was raised in a different factual context in *Carrera*, he ignores the fact that the supreme court reaffirmed its consistent holding that immigration consequences are collateral. *Carrera*, 239 Ill. 2d at 256. In doing so, it essentially reaffirmed the holding in *Delvillar* in light of the fact that the holding in *Delvillar* was based upon the same legal question found in *Carrera*–whether deportation is a collateral or a direct consequence. Again, the factual backdrop of both cases is irrelevant. The import and analysis of both cases–which is identical–is what is relevant. The fact remains, *Padilla* does not change that in Illinois immigration consequences are collateral in nature. *Carrera*, 239 Ill. 2d at 256. Consequently, the failure to admonish a defendant of potential immigration consequences does not affect the voluntariness of the plea. *Delvillar*, 235 Ill. 2d at 521.

¶ 60    Again, I find Justice Holdridge's reasoning with regard to *Padilla*/*Delvillar* convincing. My sole basis for rejecting it is the holding in *Carrera*. I offer no opinion on the remaining portion of his special concurrence.


¶ 61    JUSTICE HOLDRIDGE, specially concurring in part and dissenting in part.

¶ 62    In my view, the trial court's failure to admonish the defendant regarding the immigration consequences of his guilty plea rendered the defendant's plea involuntary, thereby violating the defendant's constitutional rights. I would reverse the trial court's order denying the defendant's motion to withdraw his guilty plea, and the defendant's conviction, on that basis. However, I agree that the defendant proved that his postconviction counsel provided inadequate representation by failing to present necessary evidence in support of the defendant's claim for ineffective assistance of trial counsel. Accordingly, since the majority

has voted to affirm the trial court's denial of the defendant's motion to withdraw his guilty plea, I agree that we should remand the case for further second-stage postconviction proceedings to address the defendant's claim for ineffective assistance of postconviction counsel. I will address each of these issues in turn.

¶ 63                    The Trial Court's Failure to Properly Admonish the Defendant

¶ 64    In his initial motion to withdraw his guilty plea, the defendant argued that his guilty plea was involuntary because the trial court failed to admonish him of the potential immigration consequences he faced if he pled guilty, as required by section 113-8 of the Code (725 ILCS 5/113-8 (West 2008)). Citing our supreme court's ruling in *People v. Delvillar*, 235 Ill. 2d 507, 521-22 (2009), the majority concludes that a trial court's failure to admonish a defendant of the potential immigration consequences of his plea "does not by itself call into question the constitutional voluntariness of the guilty plea." *Supra* ¶ 22. Our supreme court based this ruling on the following two premises: (1) immigration consequences are "collateral consequences" (*Delvillar*, 235 Ill. 2d at 521; *People v. Williams*, 188 Ill. 2d 365, 372 (1999)); and (2) " 'the defendant's knowledge of the collateral consequences of a guilty plea is not a prerequisite to the entry of a knowing and intelligent guilty plea' " (*Delvillar*, 235 Ill. 2d at 521 (quoting *Williams*, 188 Ill. 2d at 371)). In my view, the first premise does not survive the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the United States Supreme Court held that deportation was a "particularly severe penalty" that has become "intimately related to the criminal process" because federal immigration law has "enmeshed" criminal convictions and the penalty of deportation and "made removal nearly an automatic result for a broad class of noncitizen offenders." *Padilla*, 559 U.S. at 365-66. Because of its close connection to the criminal process, the United States Supreme Court ruled that deportation as a consequence of criminal conviction is "uniquely difficult to classify as either a direct or a collateral consequence." *Id.*

¶ 65    The Illinois Supreme Court's conclusion that a trial court's failure to admonish a defendant of the potential immigration consequences of his guilty plea does not call into question the constitutional voluntariness of the plea is based entirely on the premise that immigration consequences are "collateral" as a matter of law. *Delvillar*, 235 Ill. 2d at 521. That premise was squarely rejected by the United States Supreme Court in *Padilla* (at least with respect to deportation). In this case, the defendant faced deportation as a result of his guilty plea and subsequent conviction.[3] Because of the unique nature of deportation and its close connection to the criminal process, the trial court was required to admonish the defendant that he faced deportation as a result of his guilty plea and subsequent conviction in order to ensure that the defendant's plea was knowing and voluntary.[4]

_____

[3]See 8 U.S.C. § 1227(a)(2)(C) (2006) ("[a]ny alien who *** is convicted *** of [possession of a firearm] *** in violation of any law is deportable").

[4]Our supreme court decided *Delvillar* before the United States Supreme Court decided *Padilla*. The United States Supreme Court has the final word on the meaning of the federal constitution's requirements. In my view, *Delvillar* conflicts with *Padilla*, and *Padilla* controls. If our supreme court ultimately disagrees with my interpretation of *Padilla* and reaffirms *Delvillar*'s holding notwithstanding *Padilla*, then we would be bound by that holding until the United States Supreme

- 12 -

¶ 66    I recognize that the First District of our Appellate Court and courts in other jurisdictions have rejected this conclusion. See, *e.g.*, *People v. Giuterrez*, 2011 IL App (1st) 093499, ¶ 58 (applying *Delvillar* notwithstanding *Padilla* and stating that "[w]e do not read *Padilla* as rejecting the distinction between direct and collateral consequences in determining whether a defendant's guilty plea was knowingly and voluntarily entered"); *State v. Ortiz*, 44 A.3d 425, 431 (N.H. 2012) (ruling that "*Padilla* does not speak to the due process obligations of a trial court accepting a guilty plea," and upholding the traditional view that immigration consequences are collateral for that purpose); see also *Smith v. State*, 697 S.E.2d 177, 183-85 (Ga. 2010); *Steele v. State*, 291 P.3d 466, 470 (Idaho Ct. App. 2012); *United States v. Youngs*, 687 F.3d 56, 61-63 (2d Cir. 2012); *United States v. Nicholson*, 676 F.3d 376, 381 n.3 (4th Cir. 2012); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1240 (9th Cir. 2011). These courts correctly note that *Padilla*'s holding addressed counsel's obligations to provide effective assistance under the sixth amendment, not a trial court's due process obligations to ensure the voluntariness of a guilty plea under the fifth amendment. See also *People v. Fredericks*, 2014 IL App (1st) 122122, ¶¶ 41-42. However, in reaching its holding, the *Padilla* Court addressed the nature of deportation *per se* and its relation to a criminal conviction. The Court concluded, as a matter of law, that deportation could not be characterized as a "collateral consequence" of a criminal conviction. Logic dictates that this conclusion must be true *for all purposes*. See generally *People v. Peque*, 3 N.E.3d 617, 633 (N.Y. 2013) (ruling that "the *Padilla* Court's factual observation about the nature of deportation rings true in both the due process and effective assistance contexts"). Unlike the courts cited above, I find it incongruous and inappropriate to characterize deportation as "collateral" for fifth amendment purposes but not for sixth amendment purposes. Accordingly, I would hold that the trial court's failure to warn the defendant that he faced a risk of deportation before accepting the defendant's guilty plea rendered the plea involuntary and violated the fifth amendment.

¶ 67    New York's highest court recently reached a similar conclusion. See *Peque*, 3 N.E.3d at 633-35. Applying *Padilla*, a majority of the New York Court of Appeals held that "a noncitizen defendant convicted of a removable crime can hardly make a voluntary and intelligent choice among the alternative courses of action open to the defendant [citation] unless the court informs the defendant that the defendant may be deported if he or she pleads guilty." (Internal quotation marks omitted.) *Id.* at 634. Although a majority of the Justices characterized deportation as a "collateral" consequence of a criminal conviction, the court held that "fundamental fairness still requires a trial court to make a noncitizen defendant aware of the risk of deportation because deportation frequently results from a noncitizen's guilty plea and constitutes a uniquely devastating deprivation of liberty." *Id.* In sum, following *Padilla*, the court found that "deportation constitutes such a substantial and unique consequence of a plea that it must be mentioned by the trial court to a defendant as a matter of fundamental fairness." *Id.* at 635. I agree. I find *Peque* to be better reasoned and more persuasive than the decisions of other courts which have reached a contrary conclusion. I would reach the same conclusion here.

¶ 68    Justice McDade maintains that this interpretation an application of *Padilla* was foreclosed by our supreme court in *People v. Carrera*, 239 Ill. 2d 241, 255-56 (2010). I disagree. In

Court rules otherwise. *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23 n.5. Until that happens, however, we are free to apply *Padilla* as we understand it. See *id.*

*Carrera*, the defendant pled guilty to a drug offense and was sentenced to probation. After he had completed his probation on the drug offense (and after the United States Immigration and Naturalization Service (INS) had instituted deportation proceedings against him based on his guilty plea), the defendant filed a postconviction petition under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2006)) seeking to challenge his guilty plea. Section 122-1(a) of that Act provides that a person may institute postconviction proceedings under the Act if he or she is "imprisoned in the penitentiary." 725 ILCS 5/122-1(a) (West 2006). Prior decisions of our supreme court had established that a petitioner is "imprisoned" for purposes of section 122-1(a) when his "liberty [is], in some way or another, *** curtailed to a degree by the state." *Carrera*, 239 Ill. 2d at 246 (citing *People v. Pack*, 224 Ill. 2d 144, 152 (2007)). The question presented in *Carrera* was whether the fact that the defendant faced deportation proceedings rendered him "imprisoned" under the Act (thereby conferring standing to file a postconviction petition under the Act) notwithstanding the fact that he had already served the sentence on the conviction he sought to challenge.

¶ 69 The *Carrera* defendant argued, among other things, that because *Padilla* had "rejected the characterization of deportation as a collateral consequence of a guilty plea," the court must find that "deportation *** constitute[s] imprisonment under the Act." *Carrera*, 239 Ill. 2d at 255. Our supreme court disagreed, ruling that *Padilla*'s holding "does not render [a] defendant in custody for purposes of [the] Act, if the defendant has already served the sentence on the conviction that he seeks to challenge." *Id.* at 255-56. In support of this conclusion, our supreme court noted that: (1) a state trial court that imposes a criminal sentence has no control over the subsequent action of the INS, which is a federal governmental agency and an independent sovereign (*id.* at 256); (2) when a defendant convicted of a crime in Illinois is subsequently detained and deported by the INS, the resulting curtailment of his liberty is effected by the federal government, not by the State of Illinois (*id.* at 256-57); and (3) "[t]he fact that the deportation proceedings may have been instituted solely based upon the defendant's state conviction could not transform the deprivation of liberty effected by the federal government into a deprivation of liberty by the State of Illinois" (*id.* at 257). Accordingly, our supreme court held:

> "Because the state has nothing to do with defendant's deportation, and has no control over the actions of the INS, we cannot say that defendant's possible deportation renders defendant a person 'imprisoned in the penitentiary' as required in order to proceed with his postconviction petition under the Act. Defendant's custody in the INS is not pursuant to a judgment of a state court. The current constraints on defendant's liberty are imposed by the INS. The constraints of defendant's liberty due to his criminal conviction expired with defendant's successful completion of his probation, so that defendant is no longer eligible to seek relief under the Act. ***
>
> Consequently, given the fact that defendant had fully served his sentence in the conviction that he now seeks to challenge, we find that defendant was not 'imprisoned in the penitentiary' as required in order to institute a proceeding for postconviction relief under section 122-1 of the Act. That the United States Supreme Court in *Padilla* declined to classify deportation as either collateral or direct for purposes of the sixth amendment does not change that result." *Id.* at 257-58.

¶ 70 Contrary to the Justice McDade's conclusion, *Carrera*'s holding does not preclude us from holding that a trial court has a due process obligation to inform a criminal defendant of the

- 14 -

potential immigration consequences of his guilty plea. *Carrera* did not address the scope of a trial court's obligations to admonish a criminal defendant prior to accepting the defendant's guilty plea. Rather, it addressed a narrow and specific question not presented here, *i.e.*, whether a defendant facing deportation proceedings was "imprisoned in the penitentiary" for purposes of the Act even though he had served the entire sentence on the conviction he sought to challenge.

¶ 71    Moreover, contrary to the Justice McDade's suggestion, *Carrera* does not establish that deportation proceedings should be considered "collateral consequences" of a criminal conviction even after *Padilla*. *Supra* ¶¶ 55-60. In *Carrera*, our supreme court merely rejected the defendant's argument that *Padilla* required it to hold that deportation "constitute[d] imprisonment" under the Act. See *Carrera*, 239 Ill. 2d at 255. In rejecting that argument, our supreme court stated that "[e]ven in light of *Padilla*, we cannot say that deportation is a consequence that relates to the sentences imposed on the basis of [the] plea." *Id.* at 256. However, the supreme court made that statement in the context of interpreting a specific statutory term in the Act (*i.e.*, the term "imprisoned in the penitentiary"). Even in that limited context, the supreme court merely suggested that *Padilla* did not require courts to characterize deportation as a *direct* consequence of a criminal conviction. It did not suggest that, after *Padilla*, courts should continue to characterize criminal convictions as *collateral* consequences. To the contrary, *Carrera* acknowledged that, given the unique nature of deportation and its close connection to the criminal conviction, the *Padilla* Court had declined to classify deportation as a collateral consequence. *Id.* at 254-55, 258.

¶ 72    Justice McDade maintains that the differences in the "factual scenario[s]" presented in *Delvillar* and *Carrera* are "without consequence" because "[t]he outcome in both [cases] depended entirely on the same substantive legal analysis–whether deportation is a collateral or a direct consequence of a defendant's conviction." *Supra* ¶¶ 57-58. Justice McDade also contends that I have "ignore[d] the fact that [in *Carrera* our] supreme court reaffirmed its consistent holding that immigration consequences are collateral." *Supra* ¶ 59. I disagree. As an initial matter, Justice McDade erroneously characterizes the distinction between *Delvillar* and *Carrera* as being merely factual. As noted above, *Carrera* addressed an entirely different *legal issue* than the issue presented in *Delvillar*. Moreover, contrary to Justice McDade's suggestion, the *Carrera* court's resolution of the legal issue before it did not depend in any way on the conclusion that deportation was a "collateral" consequence. The issue in *Carrera* was whether deportation constituted "imprisonment" under the Act. Although the supreme court answered that question in the negative, it did not hold that deportation must therefore be characterized merely as a *collateral* consequence of a guilty plea and criminal conviction, as it had held prior to *Padilla* (see *Delvillar*, 235 Ill. 2d at 521). To the contrary, the supreme court explicitly acknowledged in *Carrera* that *Padilla* had declined to characterize deportation as either a direct *or a collateral* consequence of a plea and conviction. *Carrera*, 239 Ill. 2d at 254-55, 258. *Carrera* merely holds that deportation is not a "direct consequence" of a criminal conviction because it does not "relate[ ] to the sentences imposed on the basis of [the] plea." (Internal quotation marks omitted.) *Id.* at 256. That holding is perfectly consistent with *Padilla*'s holding that deportation cannot be characterized either as a direct or as a collateral consequence. In sum, *Carrera*'s holding that *Padilla* does not require deportation to be equated with imprisonment does not entail the conclusion that deportation is merely a

- 15 -

"collateral consequence" of a criminal conviction. And, as I noted above, treating deportation as merely a collateral consequence of a conviction would be contrary to *Padilla*.

¶ 73    In any event, regardless of whether deportation is referred to as a "direct" or "collateral" consequence, *Padilla* makes clear that deportation is a "particularly severe 'penalty' " that has become "intimately related to the criminal process" because federal immigration law has "enmeshed" criminal convictions and the penalty of deportation and "made removal nearly an automatic result for a broad class of noncitizen offenders." *Padilla*, 559 U.S. at 365-66; see also *Peque*, 3 N.E.3d at 634 (noting that deportation "frequently results from a noncitizen's guilty plea and constitutes a uniquely devastating deprivation of liberty"). Thus, following the reasoning of *Padilla* and the holding of New York's highest court in *Peque*, I would hold that deportation "constitutes such a substantial and unique consequence of a plea that it must be mentioned by the trial court to a defendant as a matter of fundamental fairness." *Peque*, 3 N.E.3d at 635. For the reasons set forth above, *Carrera* is inapposite and does not foreclose such a holding.

¶ 74                          Ineffective Assistance of Trial and Postconviction Counsel

¶ 75    I agree with the majority that the defendant's postconviction counsel rendered ineffective assistance by failing to properly present the defendant's claim for ineffective assistance of trial counsel. Accordingly, I agree that we should remand for further second-stage postconviction proceedings on that issue.[5] I write separately to clarify the legal standards governing the defendant's underlying claim for ineffective assistance of trial counsel.

¶ 76    In his postconviction petition, the defendant argued that his trial counsel rendered ineffective assistance by failing to advise him of the potential immigration consequences of his plea. As the majority correctly notes, *Padilla* governs this claim. In *Padilla*, the United States Supreme Court held that, where deportation is a clear consequence of pleading guilty (as here), counsel's failure to advise a defendant of the potential immigration consequences of a guilty plea constitutes deficient performance under prevailing professional norms. *Padilla*, 559 U.S. at 366. In other words, *Padilla* holds that such a failure by counsel violates the first prong of the *Strickland* test as a matter of law. *Id*. Thus, the defendant can prevail on his claim for ineffective assistance of counsel if he can also satisfy the second prong of *Strickland* by demonstrating prejudice. *Id*.[6]

---

[5]Such a remand would be unnecessary if the trial court had agreed to reverse the trial court's denial of the defendant's motion to withdraw his plea based upon the trial court's inadequate admonishments. Because the trial court has not done so, I will address the defendant's arguments regarding the ineffective assistance of his postconviction counsel.

[6]Justice McDade would find that, when plea counsel fails to inform his client of mandatory immigration consequences, "prejudice is presumed" and the defendant should not have to "make an actual showing of prejudice." *Supra* ¶ 53. However, in *Padilla*, the United States Supreme Court remanded the matter to the lower court for a determination of prejudice even though it found that the defendant's deportation was "presumptively mandatory." *Padilla*, 559 U.S. at 369. The *Padilla* Court held that the defendant had "sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland*" by alleging that his counsel had failed to inform him of the presumptively mandatory deportation that would be triggered by his guilty plea. *Id*. Nevertheless, the Court ruled that "[w]hether [the defendant] is entitled to relief on his claim will depend on whether he can satisfy *Strickland*'s

¶ 77    To show prejudice in the plea context, a defendant "must show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *People v. Hughes*, 2012 IL 112817, ¶ 63. As the United States Supreme Court put it in *Padilla*, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. In his supplemental brief on appeal, the defendant states that, in order to make this showing, he "must assert either a claim of actual innocence or articulate a plausible defense that could have been raised at trial." *Hughes*, 2012 IL 112817, ¶ 64; see also *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005). I disagree.[7]

¶ 78    In my view, a defendant facing potential deportation may show that his decision to reject a plea offer and go to trial would have been *rational* (which is all that *Padilla* requires) without showing that he would likely have succeeded at trial. As the United States Supreme Court recognized in *Padilla*, "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (Internal quotation marks omitted.) *Padilla*, 559 U.S. at 368. Accordingly, a defendant who fears deportation more than he fears a longer prison sentence might rationally choose to go to trial even if his defense does not appear very likely to succeed. See, *e.g.*, *United States v. Orocio*, 645 F.3d 630, 645 (3d Cir. 2011) ("For the alien defendant most concerned with remaining in the United States, especially a legal permanent resident, it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that, while not an aggravated felony, carries 'presumptively mandatory' removal consequences."). Such a defendant might be willing to risk a lengthier prison sentence in exchange for even a slight chance of prevailing at trial and thereby avoiding deportation. Such a defendant would be prejudiced by his attorney's failure to advise him of the risk of deportation because: (1) he would not have pled guilty if he had known about the deportation risk; and (2) his counsel's deficient performance deprived him of a chance to avoid deportation by prevailing at trial, even if that chance was slim.[8] In other words, depending on the value that the defendant attaches to remaining in the United States, a decision to reject a plea bargain and risk a lengthier sentence by going to trial might be rational even if the defendant appears unlikely to prevail at trial. See, *e.g.*, *Orocio*, 645 F.3d at 643 (ruling that, under *Padilla*, a "rational" decision not to plead guilty "does not focus solely on whether a defendant would have been found guilty at trial"). Under such circumstances, it would be inappropriate and overly burdensome to require the defendant to assert either a claim of actual innocence or a plausible defense that could have been raised at trial.

¶ 79    In asserting that he was required either to raise a claim of actual innocence or to articulate a plausible defense in order to show prejudice, the defendant cites language to that effect in *Hughes* and *Hall*, two Illinois Supreme Court decisions. In imposing this requirement, the

---

second prong, prejudice." *Id.* Thus, in my view, the presumption of prejudice advocated by the Justice McDade is inconsistent with *Padilla*.

[7]This court is not bound by the defendant's erroneous statement of the law. *People v. Horrell*, 235 Ill. 2d 235, 241 (2009) (a reviewing court is not bound by a party's concession); see also *People v. Martino*, 2012 IL App (2d) 101244, ¶ 24.

[8]The defendant might also be deprived of the chance to spend additional time in the United States (and outside of prison) while awaiting trial.

Illinois Supreme Court cited the United States Supreme Court's decision in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). See *Hall*, 217 Ill. 2d at 335-36. However, *Hill* merely ruled that, in order to establish *Strickland* prejudice in the plea context, a defendant must show that counsel's constitutionally ineffective performance "affected the outcome of the plea process," *i.e.*, that there is "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The *Hill* Court went on to note that, when trial counsel errs by failing to discover exculpatory evidence or by failing to inform the defendant of a possible affirmative defense, the determination of whether such errors prejudiced the defendant by inducing him to plead guilty will depend in large part on whether the presentation of the evidence or the assertion of the defense likely would have changed the outcome of a trial. *Id.* However, *Hill* did *not* hold or imply that the same considerations should govern the analysis in a case like this, wherein the alleged error was counsel's failure to advise the defendant of the potential immigration consequences of his plea.

¶ 80    Such a holding would make no sense. Unlike the failure to discover exculpatory evidence or to inform the defendant about an affirmative defense, the failure to advise a defendant regarding immigration consequences has nothing to do with the strength of the defendant's case at trial. A defendant alleging the latter type of error is not claiming that he pled guilty because his counsel's deficient representation caused him to believe that his case was weaker than it actually was. Rather, he is claiming that he pled guilty because he was unaware of the immigration consequences of such a plea. Thus, such a defendant is not required to show that he would have succeeded at trial in order to establish prejudice. As the United States Supreme Court recently noted in *Padilla*, the only question relevant to the prejudice inquiry in such cases is whether it would have been rational for the defendant to reject the plea offer and go to trial in an effort to avoid potential deportation. *Padilla*, 559 U.S. at 371-72. I recognize that the First District of our Appellate Court has reached the opposite conclusion (see *Gutierrez*, 2011 IL App (1st) 093499, ¶ 45), but I find the *Gutierrez* court's analysis of this issue contrary to *Padilla* and to the principles discussed above.

¶ 81    Turning to the merits of the defendant's claim, it is clear that the defendant's postconviction counsel failed to adequately present the defendant's claim for ineffective assistance of trial counsel. When he filed the defendant's first postconviction petition, the defendant's postconviction counsel failed to present any evidence suggesting that the defendant would not have pled guilty had he been informed of the immigration consequences of the plea. The trial court dismissed the petition on that basis. Counsel subsequently filed an amended postconviction petition with an affidavit signed by the defendant stating that he would not have pled guilty had he been informed about the immigration consequences, but the trial court struck the amended petition. The affidavit was not notarized and counsel submitted the amended petition without filing a motion for leave to submit a successive petition, as required by section 122-1(f) of the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2010)). Counsel also failed to show cause for his failure to properly bring the claim in the initial petition and prejudice resulting from that failure (see *id.*), and he failed to withdraw the notice of appeal before filing the successive petition. According to the defendant's appellate counsel, the defendant was deported approximately six weeks later. See *id.*

¶ 82    In my view, postconviction counsel's failure to timely submit any evidence of prejudice−a required element of the defendant's claim for ineffective assistance of trial counsel−violated

the defendant's right to the reasonable assistance of postconviction counsel. See 725 ILCS 5/122-1 *et seq.* (West 2010); *People v. Suarez,* 224 Ill. 2d 37, 42 (2007). Defendant's postconviction counsel failed to make amendments to the petition necessary for an adequate presentation of the defendant's contentions, as required by Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Accordingly, I agree with the majority that we should reverse and remand for additional second-stage postconviction proceedings due to postconviction counsel's inadequate representation. During those proceedings, the defendant should be allowed to present evidence in support of his claims that: (1) he would not have pleaded guilty had he known about the immigration consequences of his plea; and (2) it would have been rational under the circumstances to reject the plea bargain and proceed to trial.