# Illinois Official Reports

## Supreme Court

---

### *People v. Guzman*, 2015 IL 118749

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JORGE A. GUZMAN, Appellant. |
| Docket No. | 118749 |
| Filed | November 19, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County; the Hon. Richard Schoenstedt, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Andrew J. Boyd, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.<br><br>Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Lindsay Beyer Payne, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| Justices | JUSTICE KILBRIDE delivered the judgment of the court, with opinion.<br>Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1    In *People v. Delvillar*, 235 Ill. 2d 507 (2009), this court examined the impact of the failure to give a statutory admonishment on the potential immigration consequences of entering a guilty plea. We concluded that the admonishment was directory, not mandatory, and categorized the potential immigration consequences of the plea as collateral, not direct. Therefore, the failure to admonish did not affect the voluntariness of the plea, and defendants wishing to withdraw their pleas on that basis were required to demonstrate prejudice or a denial of justice. *Delvillar*, 235 Ill. 2d at 519, 521-22. In this case, defendant argues that our decision in *Delvillar* must be overturned based on the United States Supreme Court's later decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). We disagree and affirm the denial of defendant's motion to withdraw his guilty plea.

¶ 2                                I. BACKGROUND

¶ 3    In October 2008, seven firearms were stolen from a home in Will County. The following day, the local sheriff received a report of suspicious activity in Joliet and later found defendant and two other men in a garage, with five firearms from the burglary in plain sight. Defendant was indicted in the circuit court of Will County on a single count of aggravated possession of stolen firearms, a Class 1 felony (720 ILCS 5/16-16.1(a)(1), (c)(1) (West 2008)), for possession of between two and five firearms with knowledge that they were stolen. Defendant was previously adjudicated delinquent for aggravated unlawful use of a weapon in 2003 and received probation. He faced a possible sentence of 4 to 15 years in prison on the 2008 firearm charge. 730 ILCS 5/5-8-1(a)(4) (West 2008).

¶ 4    In February 2009, while represented by criminal defense counsel, defendant entered a fully negotiated guilty plea to the firearm charge. During the plea hearing, the trial court asked defendant whether he was a United States citizen, and, after initially stating he was, defendant quickly clarified that he was a permanent legal resident. The court did not admonish defendant about the potential impact of pleading guilty on his immigration status prior to accepting the plea pursuant to section 113-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2008)). Defendant was given the minimum sentence of four years in prison and two years of mandatory supervised release, with a recommendation for impact incarceration.

¶ 5    Defendant filed a written motion to withdraw his plea in March 2009 and argued during the subsequent hearings that he did not enter the plea knowingly and intelligently because he was not admonished pursuant to section 113-8. The trial court directed the parties to supply additional research, and, at a subsequent hearing, defense counsel noted that this court had heard oral arguments a month earlier in a similar case, *Delvillar*, 235 Ill. 2d 507. Based on that representation, the trial court asked the parties whether they wished to wait for further guidance from this court or proceed to an immediate ruling. Defendant requested an immediate ruling, and the trial court denied his motion to withdraw the plea. Defendant then filed a direct appeal of the trial court's ruling.

¶ 6    During the pendency of defendant's direct appeal, he filed a postconviction petition that was denied by the trial court at the second stage because no evidence showed he would have gone to trial if he had been properly admonished. Defendant appealed the postconviction

ruling. He then sought leave to file an amended postconviction petition adding the claim that he would not have entered the plea if he had been informed of the potential immigration consequences. At the hearing on the amended postconviction petition, defense counsel stated that defendant was to be deported, and defendant was granted leave to withdraw his notice of appeal on the first postconviction petition and file an amended petition. No further proceedings took place in the circuit court.

¶ 7    Addressing defendant's direct appeal, the appellate court reversed his conviction, concluding that his plea was not knowing and intelligent because defense counsel did not advise him of the possible immigration consequences. *People v. Guzman*, 2011 IL App (3d) 090464. The State then filed a petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 8    In October 2012, this court granted the State's petition for leave to appeal but, after briefing, issued a supervisory order remanding the cause. The supervisory order directed the appellate court to consider whether the absence of a statutory admonishment by the trial court about the potential immigration consequences of the guilty plea (725 ILCS 5/113-8 (West 2008)) permitted defendant to withdraw his plea in light of the United States Supreme Court's decision in *Padilla*, 559 U.S. 356. *People v. Guzman*, No. 113730 (Ill. Mar. 28, 2012).

¶ 9    On remand, the appellate court withdrew its original opinion, consolidated defendant's direct appeal with his appeal from the denial of his postconviction petition, and requested supplemental briefing. The appellate court subsequently reversed the denial of defendant's motion to withdraw his guilty plea in his direct appeal, remanding that cause for further proceedings, and dismissed defendant's postconviction appeal. 2014 IL App (3d) 090464.

¶ 10    After allowing the State's petition for rehearing, however, the appellate court withdrew its original opinion, with the majority issuing a revised opinion affirming the denial of defendant's motion to withdraw his plea and reversing the denial of his postconviction petition, remanding for additional postconviction proceedings. 2014 IL App (3d) 090464. Relying on *Delvillar*, the majority held in the direct appeal that the immigration consequences of a guilty plea were collateral consequences that did not affect the voluntariness of the plea. 2014 IL App (3d) 090464, ¶ 22 (citing *Delvillar*, 235 Ill. 2d at 521-22). Justice Holdridge dissented in part, asserting that the plea was constitutionally involuntary under *Padilla* because the trial court did not give the proper admonishment. He also cited the reasoning in *People v. Peque*, 3 N.E.3d 617 (N.Y. 2013). 2014 IL App (3d) 090464, ¶ 73 (Holdridge, J., specially concurring in part and dissenting in part).

¶ 11    Defendant filed a petition for leave to appeal addressing *only* the appellate court's decision on direct appeal to affirm the denial of his motion to withdraw his guilty plea. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015).

¶ 12                    II. ANALYSIS

¶ 13    Defendant asks this court to overrule its prior decision in *Delvillar*, 235 Ill. 2d 507, in light of the United States Supreme Court's decision in *Padilla*. He argues that, under *Padilla*, the absence of a statutory admonishment about the possible immigration consequences of a guilty plea (725 ILCS 5/113-8 (West 2008)) renders the plea unconstitutionally involuntary.

Because the issue presents a question of law, we review it *de novo*. *In re Detention of Hardin*, 238 Ill. 2d 33, 39 (2010).

¶ 14    Section 113-8 of the Code states:

"§ 113–8. Advisement concerning status as an alien.

Before the acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:

'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113-8 (West 2008).

¶ 15    This court previously considered whether a defendant could withdraw his guilty plea based on the trial court's failure to give a section 113-8 admonishment in *Delvillar*. After acknowledging that the admonishment "is mandatory in the sense that the circuit court does not have discretion in giving" it, we explained that the critical question was whether section 113-8 is mandatory or directory. *Delvillar*, 235 Ill. 2d at 516. In making that determination, we noted that section 113-8 did not include any negative language if the admonition is not given, such as barring the acceptance of the plea, and that the right being protected was "not necessarily *** harmed in the absence of the admonishment." *Delvillar*, 235 Ill. 2d at 517, 519. We concluded that section 113-8 was directory and the failure to comply with it was simply one factor to be considered in ruling on a defendant's motion to withdraw a guilty plea. The ruling ultimately "rest[ed] in the sound discretion of the circuit court." *Delvillar*, 235 Ill. 2d at 519. Because the right to withdraw a plea is not automatic, a defendant's request for relief must demonstrate "a manifest injustice" under the unique facts of the case. *Delvillar*, 235 Ill. 2d at 520.

¶ 16    When inadequate admonishments are given, the question of whether due process was violated arises, and the answer turns on whether the plea was made voluntarily and intelligently. In resolving that question, the court examines only the direct consequences of the plea, not the collateral consequences. This court defined "[d]irect consequences" as "those consequences affecting the defendant's sentence and other punishment that the circuit court may impose," and "[c]ollateral consequences" as those "effects upon the defendant that the circuit court has no authority to impose." *Delvillar*, 235 Ill. 2d at 520.

¶ 17    Because state courts do not control the immigration decisions of governmental agencies, we concluded that any possible immigration consequences of entering a guilty plea are collateral. "As such, the failure to admonish a defendant of potential immigration consequences does not affect the voluntariness of the plea" or violate due process. *Delvillar*, 235 Ill. 2d at 520-21.

¶ 18    Nonetheless, we noted that a plea may still be withdrawn in the absence of a constitutional violation if "real justice has been denied or if the defendant has been prejudiced by the inadequate admonishment," with the defendant bearing the burden of making the requisite showing. *Delvillar*, 235 Ill. 2d at 522. In *Delvillar*, the defendant had both erroneously informed the trial judge he was a United States citizen and failed to demonstrate prejudice in either his motion to withdraw the plea or his supporting argument.

Because the defendant failed to meet his burden of showing prejudice or a denial of real justice, we reversed the appellate court judgment in his favor and reinstated the trial court's denial of defendant's motion to withdraw his plea. *Delvillar*, 235 Ill. 2d at 522-24.

¶ 19    The following year the United States Supreme Court decided *Padilla*, cited by defendant in the instant case. Defendant contends that the reasoning in *Padilla* requires us to overrule our decision in *Delvillar*. In *Padilla*, the defendant was a noncitizen charged with a drug crime that "made his deportation virtually mandatory." *Padilla*, 559 U.S. at 359. Here, defendant argues his firearms conviction places him in a similarly precarious position. Unlike this case, however, the defendant in *Padilla* filed a postconviction petition alleging a sixth amendment violation based on the failure of his defense counsel to provide effective assistance by advising him of the possibility that he could be deported if he pled guilty. The Kentucky Supreme Court upheld the denial of the defendant's postconviction petition, finding that immigration consequences were merely collateral. *Padilla*, 559 U.S. at 359-60 (citing *Commonwealth v. Padilla*, 253 S.W.3d 482, 485 (Ky. 2008)).

¶ 20    Citing significant changes in immigration law making deportation a near certainty for many noncitizens convicted of drug or firearms crimes, the Supreme Court found "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence." *Padilla*, 559 U.S. at 366. The Court "conclude[d] that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel" and, consequently, the standards for effective assistance of counsel expressed in *Strickland v. Washington*, 466 U.S. 668 (1984), were applicable. *Padilla*, 559 U.S. at 366.

¶ 21    Although acknowledging that *Padilla* did not declare immigration consequences to be direct, defendant argues that they also cannot be considered collateral, contrary to our conclusion in *Delvillar*. In light of *Padilla*, defendant contends that the failure to give the section 113-8 admonishment renders any subsequent plea unconstitutionally involuntary. Because a valid plea must be knowing and intelligent (*Boykin v. Alabama*, 395 U.S. 238, 242 (1969)), defendant contends that *Padilla* mandates the conclusion that, in the absence of a section 113-8 admonition, his due process rights were violated and his plea was not knowing and voluntary.

¶ 22    Defendant admits that even after *Padilla* our appellate court has consistently continued to view immigration consequences as merely collateral (see 2014 IL App (3d) 090464, ¶ 66 (Holdridge, J., specially concurring in part and dissenting in part) (collecting cases)), but he maintains those cases were wrongly decided. Citing Justice Holdridge's partial dissent in the appellate decision in this case, defendant claims that if deportation cannot be deemed a collateral consequence of a criminal conviction as a matter of law, logically, "this conclusion must be true *for all purposes*." (Emphasis in original.) 2014 IL App (3d) 090464, ¶ 66 (Holdridge, J., specially concurring in part and dissenting in part). In further support of his position, defendant cites the rationale in *Peque*, 3 N.E.3d at 633-35, decided by New York's highest court. We reject that analysis.

¶ 23    *Padilla* involved a sixth amendment challenge alleging the defendant's trial counsel provided ineffective assistance. In contrast, both *Delvillar* and the instant case involve fifth amendment due process claims. As we explained in *People v. Patterson*, 2014 IL 115102, ¶ 97, the analytical standards for evaluating challenges rooted in due process and other

- 5 -

constitutional provisions vary widely. Consequently, "[a] ruling on a specific flavor of constitutional claim may not justify a similar ruling brought pursuant to another constitutional provision. [Citation.] In other words, a constitutional challenge raised under one theory cannot be supported by decisional law based purely on another provision. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)." *Patterson*, 2014 IL 115102, ¶ 97.

¶ 24    In addition, the Supreme Court's concise statement in *Padilla* "that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel" expresses an intent to restrict its conclusion to that constitutional predicate. *Padilla*, 559 U.S. at 366. Perhaps most tellingly, the Supreme Court recognized as much in *Chaidez v. United States*, decided three years after *Padilla*, when it stated while further explaining its decision in *Padilla* that "no decision of our own committed us to 'appl[y] a distinction between direct and collateral consequences to define the scope' of the right to counsel. [Citation.] And *however apt that distinction might be in other contexts*, it should not exempt from Sixth Amendment scrutiny a lawyer's advice (or non-advice) about a plea's deportation risk." (Emphasis added.) *Chaidez v. United States*, 568 U.S. ___, ___, 133 S. Ct. 1103, 1110 (2013) (quoting *Padilla*, 559 U.S. at 365). The Court again emphasized the sixth amendment context of *Padilla* by expressly stating that "[e]ven in *Padilla* [the Court] did not eschew the direct-collateral divide across the board." *Chaidez*, 568 U.S. at ___, 133 S. Ct. at 1112. Accordingly, we reject as overly broad defendant's reading that *Padilla* created a new rule barring deportation from being considered a collateral consequence for *any* purpose.

¶ 25    Moreover, even defendant concedes, as he must, that *Padilla* did not announce a rule declaring immigration consequences, including the virtual certainty of deportation, to be the *direct* consequences of a criminal conviction—even within the limited context of the sixth amendment. In Illinois, the established rule is that trial courts must admonish defendants of *only the direct consequences* of a guilty plea. *Delvillar*, 235 Ill. 2d at 520. We explained in *People v. Williams* that a knowing and intelligent plea is premised on the defendant's full awareness of only the direct consequences flowing from it, adopting the standard set forth by the Supreme Court in *Brady v. United States*, 397 U.S. 742, 755 (1970). *People v. Williams*, 188 Ill. 2d 365, 371 (1999). Consequently, a plea may be knowing and intelligent even if the defendant is unaware of its nondirect consequences (*Williams*, 188 Ill. 2d at 371) such as deportation (*Delvillar*, 235 Ill. 2d at 521). Thus, even if, as defendant claims, *Padilla* is applicable in the context of a fifth amendment due process challenge, it does not mandate a holding that the failure to give section 113-8 admonishments entitles defendants to withdraw their guilty pleas.

¶ 26    As long as the potential immigration consequences faced by the defendant are not deemed to be direct, that is, "affecting the defendant's sentence and other punishment that the circuit court may impose," our longstanding precedents do not bar the acceptance of a guilty plea in the absence of a section 113-8 admonishment. *Delvillar*, 235 Ill. 2d at 520. "Even in light of *Padilla*, we cannot say that deportation is a consequence that relates to the sentences imposed on the basis of that plea." *People v. Carrera*, 239 Ill. 2d 241, 256 (2010). Since *Padilla*, we have also rejected the claim that the distinction between direct and collateral consequences no longer applies in cases involving fifth amendment challenges. *People v. Hughes*, 2012 IL 112817, ¶¶ 34-66. Consequently, we conclude that *Padilla* does not compel the reversal of our prior holding in *Delvillar*.

¶ 27    Our decision puts us in the company of the vast majority of courts nationwide that have rejected similar *Padilla* claims. Although not controlling in this court, the post-*Padilla* decisions of the federal courts of appeal and all but one high state court that have considered the issue are in agreement that trial courts are not constitutionally required to provide admonishments about immigration consequences before accepting defendants' guilty pleas. See *United States v. Carrillo-Estrada*, 564 F. App'x 385, 387 (10th Cir. 2014); *United States v. Rodriguez-Penton*, 547 F. App'x 738, 739-40 (6th Cir. 2013) (collecting cases and explaining that the sixth amendment imposes a higher burden on counsel to inform clients of the consequences of entering a guilty plea than the fifth amendment imposes on courts); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1240-41 (9th Cir. 2011) (*per curiam*) (explaining that *Padilla* "sheds no light on the obligations" the trial court has under the fifth amendment); see also *United States v. De La Cruz-Trejo*, 518 F. App'x 286, 286-87 (5th Cir. 2013) (*per curiam*) (declining to decide whether *Padilla* overturned circuit court precedent but holding that, at a minimum, trial courts do not commit plain error by failing to admonish); *United States v. Youngs*, 687 F.3d 56 (2d Cir. 2012) (recognizing in the context of civil commitments that *Padilla* did not undermine distinction between direct and collateral consequences in fifth amendment cases); *United States v. Nicholson*, 676 F.3d 376, 381-82 & n.3 (4th Cir. 2012) (holding both that *Padilla* did not change the fifth amendment framework and that trial courts are not required to provide admonishments on the loss of federal benefits). See *Smith v. State*, 697 S.E.2d 177, 183-84 (Ga. 2010) (explaining that the direct/collateral dichotomy still applies to fifth amendment, but not sixth amendment, and that defense counsel's burden is greater than the trial court's duty); *State v. Ortiz*, 44 A.3d 425, 429-31 (N.H. 2012); *Stiger v. Commonwealth*, 381 S.W.3d 230, 235 (Ky. 2012); *State v. Davis*, 9 N.E.3d 1031, 1040 (Ohio 2014) (finding the issue forfeited but noting that "*Padilla*'s holding concerns what an attorney must advise a defendant before the defendant enters a plea of guilty [and not] what a trial court must advise a defendant before accepting a jury waiver").

¶ 28    Even the single outlying decision cited by defendant, issued by New York's highest court in *Peque*, rejected the automatic withdrawal of pleas entered without admonishments addressing potential immigration consequences. *Peque*, 3 N.E.3d at 622, 638. Contrary to defendant's claim in the instant appeal that a due process violation is presumptively prejudicial, the majority in *Peque* required defendants to make a showing of prejudice before being able to withdraw their guilty pleas. In this case, defendant would find no relief if held to that standard.

¶ 29    Under defendant's approach, any plea entered in the absence of a section 113-8 admonishment would be deemed invalid and subject to withdrawal without any need for a showing of prejudice or denial of real justice. Without a need to demonstrate prejudice, an improperly admonished defendant would presumably be entitled to withdraw a plea even if fully informed by defense counsel about the possible immigration consequences *before* entering the plea. The potential windfall to defendants who have suffered no prejudice or injustice without the lack of the statutory admonishment could be far-reaching. As the Supreme Court warned in *Padilla*, because pleas constitute "nearly 95% of all criminal convictions," courts "must be especially careful about recognizing new grounds for attacking the validity of guilty pleas." *Padilla*, 559 U.S. at 372.

¶ 30    This court acknowledged a similar need for caution in *Delvillar*, placing the burden of establishing prejudice or the denial of "real justice" on defendants who wish to withdraw their pleas in the absence of proper immigration admonishments. *Delvillar*, 235 Ill. 2d at 522. Even *Padilla* required defendants to establish a reasonable probability that they would not have pled guilty if they had been properly admonished. *Padilla*, 559 U.S. at 366, 374-75. We do not find defendant's suggested approach sufficiently persuasive to overcome the fundamental principle of *stare decisis* and overturn our decision in *Delvillar*.

¶ 31    Shifting his focus, defendant next broadly asserts that if the failure to provide section 113-8 admonishments has no adverse consequences, trial courts will have little incentive to admonish even noncitizen defendants, who often face a serious risk of deportation. Accordingly, he asks that we construe the admonishment in section 113-8 to be mandatory as a matter of sound judicial policy. The State counters that defendant's approach would give defense counsel a strong incentive to remain silent if a trial court fails to give the section 113-8 admonishment because the defendant would later be entitled to withdraw the plea without any showing of prejudice or injustice. In refuting the State's contention, defendant notes that defense counsel must act in accordance with the professional duty of candor and may, at least arguably, violate Rule 3.3 of the Illinois Rules of Professional Conduct of 2010 by tacitly ignoring the trial court's error (see Ill. R. Prof. Conduct (2010) R. 3.3 (eff. Jan. 1, 2010) (requiring attorneys to avoid conduct that undermines the integrity of the judicial process)).

¶ 32    Trial judges are under a similar duty to perform all the duties of their office in accordance with Canon 3 of the Code of Judicial Conduct (Ill. S. Ct. R. 63 (eff. July 1, 2013)). We conclude it is unlikely that trial judges will knowingly fail to give section 113-8 admonishments to noncitizen defendants in the absence of a stronger incentive to comply with the law. We also decline to presume that trial judges will interpret our decision in this case as condoning the routine omission of admonishments enacted by our legislature. While our trial courts undoubtedly have a statutory obligation to admonish noncitizen defendants properly, nothing in *Padilla* advances that obligation to the level of a constitutional mandate.

¶ 33    Noncitizen defendants need not be disheartened by our decision today, however, because our trial courts do not bear the sole burden of ensuring that defendants are properly admonished about the potential immigration consequences of entering a guilty plea. As *Padilla* made clear, to be constitutionally effective criminal defense counsel must "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369. Defense counsel is generally in a superior position to the trial court to make determinations about their clients' citizenship and provide appropriate advice about potential immigration consequences. *Libretti v. United States*, 516 U.S. 29, 50-51 (1995). As in *Padilla*, noncitizen defendants who do not receive that advice from criminal defense counsel may be entitled to relief based on counsel's ineffective assistance if they can make the requisite showing of prejudice. *Padilla*, 559 U.S. at 374.

¶ 34    Defendants who did not receive section 113-8 admonishments may also be entitled to withdraw their pleas if they have been denied "real justice" or have suffered prejudice. *Delvillar*, 235 Ill. 2d at 522. Before this court, however, defendant has not raised that argument or provided any evidence supporting a claim that he would not have pled guilty if

he had been properly admonished.

¶ 35                              III. CONCLUSION

¶ 36        For the reasons stated, we decline to overrule our decision in *Delvillar* in light of the Supreme Court's ruling in *Padilla* and defendant's arguments. We affirm the appellate court's judgment upholding the denial on direct appeal of defendant's motion to withdraw the guilty plea.

¶ 37        Appellate court judgment affirmed.