NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210315-U

NO. 4-21-0315

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 12, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Coles County |
| JOHN WATTS, | ) | No. 14CF424 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mitchell Kevin Shick, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in summarily dismissing defendant's *pro se* postconviction petition.

¶ 2    Defendant, John Watts, appeals the trial court's first-stage dismissal of his *pro se* postconviction petition. He argues the court erred in finding that claims raised in his petition were barred by the doctrine of *res judicata* and contends his petition presented the gist of constitutional claims that he received ineffective assistance from both his postplea and appellate counsel. We affirm.

¶ 3                    I. BACKGROUND

¶ 4                 A. Charges and Plea Proceedings

¶ 5    In September 2014, the State charged defendant with armed violence, predicated on attempted robbery (720 ILCS 5/33A-2(c) (West 2012)) (count I); aggravated battery with a

firearm (*id.* § 5/12-3.05(e)(1)) (count II); and unlawful possession of a firearm by a felon (*id.* § 5/24-1.1(a)) (count III). The charges were based on claims that defendant "shot Aaron Moutray in the hip with a .22 caliber semi-automatic hand[ ]gun" while attempting "to rob *** Moutray of cannabis." The same month, the trial court appointed Anthony Ortega to represent defendant. The court also conducted a preliminary hearing, during which it admonished defendant that he faced a sentencing range of 25 to 40 years in prison on count I, 6 to 30 years on count II, and 2 to 10 years on count III.

¶ 6 In March 2015, defendant pleaded guilty to counts II and III pursuant to a fully negotiated plea agreement with the State. In exchange for defendant's guilty pleas to counts II and III, the State agreed defendant would receive concurrent sentences of 12 and 3 years in prison, respectively. It also agreed to the dismissal of count I. For its factual basis, the State relied on the arresting officer's 48-hour affidavit. According to the affidavit, Moutray reported that he was attempting to sell cannabis to defendant outside of his residence when he noticed a second individual "approaching him from the side of the residence." Believing he was about to be robbed, Moutray "pulled a knife out of his pocket, and asked what was going on." Defendant then "pulled a hand[ ]gun out and began shooting it at [Moutray]." Moutray reported his father and girlfriend were present at the time of the incident and were also "in the line of fire." Ultimately, Moutray "was shot one time in the left hip area." Following the incident, defendant was arrested and questioned by the police. He provided substantially the same version of events as Moutray and acknowledged that he intended to steal cannabis from Moutray. Defendant further reported "that although [Moutray] did pull out a knife, [defendant] did over[ ]react by shooting at [Moutray], and knew what he did was wrong and against the law." The record reflects the trial court accepted defendant's guilty pleas and sentenced him in accordance with the parties' agreement.

¶ 7                                    B. Postplea Proceedings

¶ 8          In April 2015, less than 30 days after his guilty pleas and sentencing, defendant *pro se* filed a postplea motion, alleging his guilty pleas resulted from "[i]nsufficient counseling" and that he acted in self-defense. The trial court appointed counsel to represent defendant, and both defendant and his counsel filed supplemental motions to withdraw his guilty pleas and vacate his sentences. In September 2015, the court denied defendant's motions and he appealed. On appeal, this court allowed the parties' motion for summary remand. *People v. Watts*, No. 4-15-0746 (March 10, 2016) (nonprecedential order remanding for strict compliance with Illinois Supreme Court Rule 604(d)).

¶ 9          Following additional postplea proceedings, appeals, and remands in the case that are not relevant to the issues on appeal, the trial court appointed attorney Stephanie Corum to represent defendant. In December 2018, Corum filed an amended motion to withdraw guilty plea on defendant's behalf, alleging as follows:

> "1. Defendant asserts that his guilty plea was coerced because it was obtained by *** Ortega not providing [defendant] with effective assistance of counsel:
>
> > (a) *** Ortega refused to file a self[-]defense claim.
> >
> > (b) *** Ortega refused to consult an expert regarding the trajectory of the gunshot that would have supported a self[-]defense claim.
> >
> > (c) *** Ortega failed to show Defendant his video[ ]taped statement and only would relate to Defendant what the taped statement said.
> >
> > (d) *** Ortega failed to consult with witnesses that Defendant g[a]ve in an effort to support his claim of self[-]defense.

2. Defendant asserts that his guilty plea was coerced or involuntary because the charge of armed violence was used to persuade Defendant to accept [a] plea to a lesser charge; however, the charge of armed violence was not a viable charge against Defendant."

¶ 10　　　　　In April 2019, the trial court conducted a hearing on defendant's amended motion. Defendant testified and described his interactions with Ortega prior to his plea proceedings. He stated he believed he had a valid self-defense claim to the charged offenses and denied reporting to the police that he intended to rob the victim. Regarding plea negotiations, defendant maintained that more than one plea offer was presented to him. The first offer he received from the State would have required him to plead guilty to armed violence as alleged in count I. Ultimately, however, defendant pleaded guilty to counts II and III, and count I was dismissed. Upon questioning by Corum, defendant further testified as follows:

"Q. Did you plead guilty because the armed violence count was going to be dismissed?

A. No.

Q. Why did you plead guilty then to Count II and Count III?

A. I plead[ed] guilty because I felt I ain't had no other choice.

Q. What do you mean by, 'you had no other choice'?

A. Because *** counsel told me that either I take this deal or I go to trial on all charges. And I was—I was still claiming not to be guilty of any of the charges.

Q. So why did you not go to trial?

A. It was just, I was misled into pleading guilty.

Q. When you say you were misled, how were you misled, sir?

A. By not having effective assistance of counsel. Counsel *** did nothing for me, basically. Nothing that I—I asked about expert witnesses. I asked about him interviewing the witnesses. He did nothing, nothing of the such. He said he couldn't do an expert witness, the State wouldn't allow it."

¶ 11 Defendant asserted he asked Ortega to raise a self-defense claim on his behalf. When asked whether he did not proceed to a jury trial because he was mistaken about his rights under the law, defendant responded that it was "mainly" because Ortega advised against a trial due to his prior convictions.

¶ 12 According to defendant, he contacted Ortega shortly following his guilty pleas because he wanted to withdraw his pleas and "pursue [his] self-defense plan," and because he learned new information about the victim's injury. Specifically, defendant learned the victim had a gunshot wound to the left hip. He believed the location of the injury would have supported his self-defense claim because, according to defendant, the victim was approaching defendant with a knife at the time defendant shot him.

¶ 13 Defendant also testified that after he pleaded guilty, he learned "the armed violence charge was not properly charged" and should not have been used in plea negotiations. When asked a second time whether he pleaded guilty in exchange for the dismissal of the armed violence count, defendant responded "[y]es." On cross-examination, the State asked defendant to clarify his testimony regarding whether he pleaded guilty to get the armed violence charged dismissed, noting defendant had given two different answers to the question on direct examination. Defendant responded as follows:

"A. I'm not sure that I said that I—I plead[ed] guilty so the armed robbery charge—well, actually, I did, because I was misled as to *** the evidence of what

*** Ortega had advised me of prior to the plea.

Q. About what?

A. Meaning that the State had evidence that the victim was shot with his back turned."

¶ 14 At the hearing, the State called Ortega as a witness. Ortega recalled meeting with defendant "a handful of times" prior to his plea. He asserted he went through the discovery in the case with defendant and informed him of the evidence against him. Ortega testified it was his opinion that defendant did not have a viable self-defense claim and he agreed that opinion "was part of [his] trial strategy." On cross-examination, Ortega elaborated on why he did not believe defendant's self-defense claim was viable, stating as follows:

"Well, I—I—from my vague recollection of the facts of the case, I know there was an allegation that he might have brought someone else there with the sole purpose of ripping off a guy that he was there to buy, I think to buy drugs from. So, I'm sure [defendant] and I had discussions about who was the initial aggressor."

¶ 15 The trial court denied defendant's amended motion to withdraw his plea. In setting forth its decision, the court found defendant failed to show "that a decision to reject his plea bargain would have been rational under the circumstances." It noted that even if the armed violence charge—a class X felony with a sentencing range of 25 to 40 years—was not viable, defendant still faced a sentencing range of 6 to 30 years in connection with count II, charging him with aggravated battery with a firearm. The court noted defendant's criminal history included prior felony convictions and prior terms of imprisonment in the Illinois Department of Corrections (DOC). Also, defendant was on mandatory supervised release at the time of the underlying offenses. The court stated that "had [defendant] rolled the dice and gone to trial and had been

convicted, *** it [was] unlikely that he would have received a sentence anywhere near 12 years." It concluded that "even if we throw that armed violence charge out the window, I still don't think that [not pleading guilty and going to trial] would have been a rational decision based upon the evidence in this case."

¶ 16                                    C. Direct Appeal

¶ 17        Defendant appealed the trial court's denial of his amended motion. On appeal, he argued he was entitled to withdraw his guilty pleas because Ortega provided ineffective assistance and the trial court improperly admonished him regarding the possible sentencing ranges he faced. *People v. Watts*, 2020 IL App (4th) 190279-U, ¶ 22. As to his ineffective-assistance claim, he specifically asserted (1) "it was objectively unreasonable for [Ortega] to not recognize that count I of the charging instrument—armed violence predicated on attempted robbery—was invalid, as the armed violence statute makes clear that that offense cannot be predicated on attempted robbery" and (2) he suffered prejudice "because, but for [Ortega's] deficient performance, he would have pleaded not guilty and insisted on going to trial." *Id.* ¶ 25.

¶ 18        Regarding defendant's ineffective-assistance claim, this court agreed with the State that the claim was forfeited because it had not been raised in the December 2018 amended postplea motion filed on defendant's behalf by Corum. *Id.* ¶ 26. However, we elected to address defendant's argument, noting that forfeiture is a limitation on the parties and not the court, and that a defendant's forfeiture may be overlooked when necessary to reach a just result. *Id.* Ultimately, we concluded that defendant failed to demonstrate that Ortega provided ineffective assistance because he failed to establish prejudice. *Id.* ¶ 28. We stated as follows:

> "Here, even assuming defendant can establish that [Ortega's] performance was deficient in not recognizing that one of the counts charged by the State was invalid,

- 7 -

defendant's ineffective-assistance claim still fails, as he is unable to establish prejudice. Defendant attempts to establish prejudice merely by stating that he 'has stated in five separate motions that he would not have pled guilty absent [plea counsel's] deficient representation.' Defendant provides no further elaboration on this conclusory allegation, nor does he suggest the existence of a plausible defense to the charges properly filed against him. Although we note that defendant made several broad allegations pertaining to a possible self-defense claim in his initial *pro se* motion, he does not address those allegations on appeal, let alone explain how they in fact help to demonstrate that he had a plausible defense." *Id.*

¶ 19 As noted, defendant's second contention on appeal concerned the trial court's sentencing admonishments. Specifically, defendant argued the court improperly admonished him that he faced a sentencing range of 25 to 40 years in prison if convicted on count I. *Id.* ¶ 30. We held defendant forfeited this claim by failing to raise it in his amended postplea motion. *Id.* ¶¶ 30-31.

¶ 20        D. Postconviction Proceedings

¶ 21 In April 2021, defendant filed a *pro se* postconviction petition. Relevant to this appeal, he alleged ineffective assistance of both his postplea and appellate counsel. Underlying his claims was the assertion that Ortega, his guilty plea counsel, was ineffective for failing to challenge his armed violence charge in count I on the basis that it was not a viable charge. According to defendant, his guilty pleas were coerced and involuntary because the nonviable charge was used during plea negotiations "to force [him] to either go to trial on all the charges he faced or plead guilty to [a] lesser charge that [he] made [a] claim of self-defense to."

¶ 22 In his *pro se* petition, defendant asserted Corum was ineffective for failing to raise

Ortega's ineffectiveness during postplea proceedings. He maintained he made Corum aware of Ortega's ineffectiveness prior to the filing of the December 2018 amended motion to withdraw guilty plea that Corum filed on his behalf, but she failed to present that claim to the trial court either in the amended motion or during the hearing that was conducted on the motion. To support his claim that Corum was ineffective, defendant attached various documents to his petition, including (1) a copy of count I of the charging instrument; (2) a letter from Ortega to defendant that presented a plea offer from the State, pursuant to which defendant would plead guilty to armed violence as charged in count I in exchange for a 32-year prison sentence; and (3) a copy of section 33A-2 of the Criminal Code of 2012 (720 ILCS 5/33A-2 (West 2012)), setting forth the offense of armed violence.

¶ 23          Defendant also asserted his appellate counsel was ineffective for failing raise on direct appeal Corum's ineffectiveness in not arguing Ortega's ineffectiveness. He argued appellate counsel failed to raise Corum's ineffectiveness in his appellant's brief and, instead, challenged only Ortega's ineffectiveness. Defendant alleged appellate counsel's actions "caused his issues to be forfeited on appeal" rather than meaningfully addressed. He further asserted that his appellate counsel was ineffective for failing to argue that he was coerced into pleading guilty because of Ortega's ineffectiveness and "the armed violence charge that was not a viable charge" being "used to persuade [him] to accept [a] plea to a lesser charge." To support his ineffective assistance of appellate counsel claims, defendant attached the affidavit of his appellate counsel from his direct appeal, Sarah Inskeep. In her affidavit, Inskeep acknowledged raising issues on direct appeal that were not raised by Corum in the December 2018 amended motion. She averred her actions were not strategic; she had been a "new attorney" when she represented defendant; and she "was not aware at the time that by misframing the issues, [she] would cause [the] issues to be forfeited on

appeal."

¶ 24　　　　In May 2021, the trial court made a docket entry, stating it had reviewed defendant's *pro se* postconviction petition. The court determined this court, on direct appeal in *Watts*, 2020 IL App (4th) 190279-U, addressed and rejected defendant's "claims of ineffective assistance of both trial and appellate counsel," which were based upon the failure to challenge the viability of defendant's armed violence charge. Accordingly, it found those claims barred by the doctrine of *res judicata* and it dismissed defendant's petition.

¶ 25　　　　This appeal followed.

¶ 26　　　　　　　　　　　　II. ANALYSIS

¶ 27　　　　On appeal, defendant argues the trial court erred by summarily dismissing his *pro se* postconviction petition. He contends the court erroneously found his postconviction claims barred by the doctrine of *res judicata*. Further, he maintains that he asserted two claims in his petition that raised the gist of constitutional claims.

¶ 28　　　　First, defendant argues that both Corum and his appellate counsel were ineffective for failing to properly present the issue of Ortega's ineffectiveness in failing to challenge the viability of the armed violence charge. Specifically, he contends (1) Corum was ineffective for failing to argue during postplea proceedings that Ortega was ineffective for not challenging the viability of his armed violence charge and (2) his appellate counsel was ineffective on direct appeal for failing to challenge Corum's ineffectiveness on that basis. Second, defendant also argues his appellate counsel was ineffective for failing to argue on direct appeal that his guilty plea was not knowing due to his mistaken understanding of the consequences of his plea. Relative to this claim, defendant asserts his plea was involuntary and coerced "based upon the use of the unviable armed violence charge to get [him] to plead guilty to lesser charges."

¶ 29    Under the Post-Conviction Hearing Act (Act), there is "a three-stage process for an imprisoned person to raise a constitutional challenge to a conviction or sentence." *People v. Hatter*, 2021 IL 125981, ¶ 22, 183 N.E.3d 136 (citing 725 ILCS 5/122-1 *et seq.* (West 2016)). "At the first stage, the circuit court has 90 days to review a petition and may summarily dismiss it if the court finds it is frivolous and patently without merit." *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006). A postconviction petition is frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17.

¶ 30    Further, the doctrines of *res judicata* and forfeiture bar a defendant from raising claims in an initial postconviction proceeding "that were or could have been adjudicated on direct appeal." *People v. Blair*, 215 Ill. 2d 427, 443-44, 831 N.E.2d 604, 614-15 (2005). A postconviction petition may be summarily dismissed based upon either doctrine. *Id.* at 445. "The doctrine of *res judicata* bars consideration of issues that were previously raised and decided on direct appeal." *Id.* at 443. "For *res judicata* to apply, there must have been a final judgment on the merits of the case." *In re Leona W.*, 228 Ill. 2d 439, 455, 888 N.E.2d 72, 81 (2008). Alternatively, forfeiture bars a defendant from raising claims in a postconviction proceeding "that could have been raised [on direct appeal] but were not." *Blair*, 215 Ill. 2d at 443-44.

¶ 31    Additionally, ineffective-assistance-of-counsel claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17.

Under that standard, "a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Id.* (quoting *Strickland*, 466 U.S. at 687-88). "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.*

¶ 32    A trial court's first-stage dismissal of a postconviction petition is subject to *de novo* review. *People v. Swamynathan*, 236 Ill. 2d 103, 113, 923 N.E.2d 276, 282 (2010).

¶ 33                    A. Ineffective Assistance of Postplea and Appellate Counsel
                            Based on Plea Counsel's Ineffectiveness

¶ 34    As stated, defendant first argues his *pro se* postconviction petition presented the gist of constitutional claims based on the ineffective assistance of both his postplea and appellate counsel for failing to properly challenge Ortega's ineffectiveness. In particular, he asserts that (1) Corum was ineffective during postplea proceedings for failing to argue that Ortega was ineffective for not challenging the viability of his armed violence charge and (2) appellate counsel was ineffective on direct appeal for failing to raise Corum's ineffectiveness for not arguing Ortega's ineffectiveness.

¶ 35                            1. *Doctrine of* Res Judicata

¶ 36    Initially, we find no error in the trial court's determination that these claims were barred by the doctrine of *res judicata*. Again, that doctrine bars the consideration of issues in a postconviction proceeding that were previously raised and decided on direct appeal. *Blair*, 215 Ill. 2d at 443.

¶ 37    In this case, both of the above claims, asserting ineffective assistance of postplea and appellate counsel, were based on the underlying assertion that Ortega, defendant's plea

- 12 -

counsel, was ineffective for failing to challenge the viability of defendant's armed violence charge. On direct appeal, appellate counsel raised that precise claim on defendant's behalf, asserting (1) "it was objectively unreasonable for [Ortega] to not recognize that count I of the charging instrument—armed violence predicated on attempted robbery—was invalid, as the armed violence statute makes clear that that offense cannot be predicated on attempted robbery" and (2) defendant was "prejudiced because, but for [Ortega's] deficient performance, he would have pleaded not guilty and insisted on going to trial." *Watts*, 2020 IL App (4th) 190279-U, ¶ 25. Additionally, although we initially agreed that the issue was forfeited because it was not raised during postplea proceedings by Corum, we nevertheless elected to address the argument "to reach a just result." *Id.* ¶ 26. In other words, we overlooked defendant's forfeiture of the issue and reached the merits of his claim. Ultimately, we rejected defendant's contention that Ortega was ineffective on the basis that defendant was "unable to establish prejudice." *Id.* ¶ 28.

¶ 38        Here, an ineffective-assistance-of-counsel claim based on Ortega's failure to challenge the viability of defendant's armed violence charge was an essential part of defendant's postconviction claims of ineffective assistance of postplea and appellate counsel. Thus, because the issue of Ortega's ineffectiveness was raised and decided on direct appeal, the doctrine of *res judicata* bars not only that claim but also defendant's related ineffective-assistance claims.

¶ 39        Defendant argues that even if we find *res judicata* applies, there are occasions that call for relaxing doctrines that might otherwise bar the presentation of a postconviction claim. See *People v. English*, 2013 IL 112890, ¶ 22, 987 N.E.2d 371 (stating the doctrines of *res judicata* and forfeiture can be relaxed when (1) fundamental fairness so requires, (2) the forfeiture stems from the ineffective assistance of appellate counsel, or (3) facts relating to the issue do not appear on the face of the original appellate record). However, for the reasons that follow, even if we were to

- 13 -

relax the doctrine of *res judicata* in this case, we would find no arguable merit to defendant's ineffective-assistance claims.

¶ 40                              2. *Frivolous or Patently Without Merit*

¶ 41        Again, "[a]t the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. As discussed, defendant's claims that both Corum and his appellate counsel were ineffective are based on assertions that they failed to properly raise issues connected with Ortega's ineffectiveness in failing to challenge the viability of defendant's armed violence charge. Accordingly, unless defendant can show that Ortega was arguably ineffective on this asserted basis, he cannot establish that he was arguably prejudiced by either Corum or appellate counsel's failure to properly raise the issue. See *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000) ("Unless the underlying issue is meritorious, petitioner suffered no prejudice from counsel's failure to raise it ***."). In this instance, even assuming Ortega's performance was deficient as alleged by defendant, it is not arguable that defendant suffered prejudice.

¶ 42        The *Strickland* standard for ineffective-assistance-of-counsel claims also applies to a claim that a defendant's trial counsel was ineffective during the guilty-plea process. *People v. Brown*, 2017 IL 121681, ¶ 26, 102 N.E.3d 205. Under the second *Strickland* prong, "a guilty-plea defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Id.* Conclusory allegations are insufficient. *Id.* Rather, when the ineffective-assistance claim relates to a defendant's prospects at trial, the defendant must raise "a claim of innocence or

a plausible defense to establish prejudice." *Id.* ¶ 45. Also, "for a guilty-plea defendant to obtain relief on a claim that he relied on his counsel's erroneous advice about a consequence of his plea, the defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." (Internal quotation marks omitted.) *Id.* ¶ 48.

¶ 43        On appeal, defendant alleges he was prejudiced by Ortega's allegedly deficient performance because had he been informed that the armed violence charge was not viable, he would have elected to go to trial on his remaining charges. Defendant asserts "he had a valid self-defense claim" to the charge of aggravated battery with a firearm. Further, he contends that he had a "mistaken belief of the actual sentencing liability he faced if he went to trial." Specifically, he asserts on appeal that he "believed that he faced a statutory prison sentence of 25 to 40 years" for the offense of armed violence.

¶ 44        In this instance, defendant's ineffective-assistance claims relate not to his prospects at trial but, instead, to his understanding of the consequences of his plea. He essentially asserts he was misled into believing his plea deal was more beneficial to him than it actually was given that his armed violence charge was never viable. Accordingly, defendant had to show "that a decision to reject the plea bargain would have been rational under the circumstances." (Internal quotation marks omitted.) *Id.*

¶ 45        Here, in his *pro se* postconviction petition, defendant repeatedly asserts he was "coerced" into pleading guilty. However, he failed to allege facts showing a decision to reject his ultimate plea offer would have been rational. See *People v. Tucek*, 2019 IL App (2d) 160788, ¶ 17, 125 N.E.3d 402 (stating that to survive a summary dismissal a defendant must allege "facts to show that the decision to reject the plea bargain would have been rational under the circumstances").

¶ 46    Further, the record also fails to support a claim of prejudice. It shows defendant pleaded guilty to aggravated battery with a firearm (count II), a Class X felony with a sentencing range of 6 to 30 years in prison, and unlawful possession of a firearm by a felon (count III), a Class 3 felony with a sentencing range of 2 to 10 years in prison. As part of his plea agreement, defendant received a total sentence of 12 years in prison, which was less than the median sentence he could have received for his most serious offense. Moreover, the record reflects defendant's criminal record was significant, suggesting he would not have fared better if convicted and sentenced following a trial. As described by the State at defendant's guilty plea hearing, defendant's criminal convictions included (1) a 1996 conviction for possession of a controlled substance, (2) a 1999 conviction for possession of cocaine for which he served three years in DOC, (3) a 2001 conviction for criminal drug conspiracy for which he served three years in DOC, (4) a 2003 conviction for a "controlled substance matter," (5) a 2007 conviction for "manufacture delivery of a controlled substance" for which he served six years in DOC, and (6) a 2011 conviction for possession of narcotics for which he served four years in DOC. Information in the record also indicates defendant was on mandatory supervised release for his 2011 conviction when the underlying offenses occurred.

¶ 47    Additionally, although defendant asserts he had a plausible defense to the charges against him, *i.e.*, a claim of self-defense, the record suggests there was strong evidence of his guilt of both counts II and III. In particular, the record shows defendant admitted to the police that he intended to rob the victim and there is no dispute that he possessed a gun and shot the victim. Also, he admitted that he overreacted when the victim pulled out a knife, acknowledged that he introduced the gun into the situation, and stated he "knew what he did was wrong and against the law." We further note that a claim of self-defense would not have been a plausible defense to count

III, unlawful possession of a firearm by a felon.

¶ 48    Finally, defendant's testimony at the hearing on his amended motion to withdraw his guilty plea was contrary to his assertion on appeal that the dismissal of the armed violence charge was the major impetus behind his pleas. Specifically, defendant gave conflicting testimony on direct examination regarding whether he pleaded guilty to get the armed violence charge dismissed—initially denying that the dismissal of that charge was the reason he pleaded guilty, but later answering the same question in the affirmative. Additionally, when asked whether he decided not to proceed to a jury trial because he was mistaken about his rights under the law, defendant responded that it was "mainly" because Ortega advised against going to trial because of his prior convictions. Finally, when the State asked him on cross-examination to clarify his conflicting testimony regarding the armed violence charge, defendant suggested the reason he pleaded guilty was because he was misled regarding the evidence, specifically, where the victim had been shot. His testimony does not indicate his pleas were motivated by the dismissal of his armed violence charge.

¶ 49    Here, not only did defendant fail to allege facts that showed he was arguably prejudiced by Ortega's failure to challenge the viability of his armed violence charge, the record also does not support such a claim. Accordingly, *res judicata* aside, we agree with the State that defendant's allegations of ineffective assistance of postplea and appellate counsel, based on Ortega's ineffectiveness in failing to challenge the armed violence charge, were frivolous and patently without merit.

¶ 50              B. Appellate Counsel's Failure to Argue
            Defendant's Guilty Plea Was Not Knowing or Voluntary

¶ 51    As set forth above, defendant also argues on appeal that his appellate counsel was ineffective for failing to argue on direct appeal that his guilty plea was not knowing or voluntary

- 17 -

due to his mistaken understanding of the consequences of his plea. Specifically, he contends he "was not aware of the consequences of his plea as compared to pursuing trial." Similar to his previous claim, defendant asserts his plea was coerced "based upon the use of the unviable armed violence charge to get [him] to plead guilty to lesser charges." Defendant points out that this issue was raised by Corum in her amended postplea motion. He contends the issue was preserved for appeal but not raised or addressed.

¶ 52    Here, the record shows that during defendant's postplea proceedings, Corum raised the following issue in defendant's amended motion to withdraw his guilty plea:

> "Defendant asserts that his guilty plea was coerced or involuntary because the charge of armed violence was used to persuade Defendant to accept plea to a lesser charge; however, the charge of armed violence was not a viable charge against Defendant."

This claim was not based upon Ortega's alleged ineffectiveness and, although preserved by Corum, it was not raised on direct appeal by defendant's appellate counsel. As a result, the doctrine of forfeiture barred defendant from raising it in his postconviction petition. *Blair*, 215 Ill. 2d at 443-44.

¶ 53    Again, defendant argues this court may relax the forfeiture doctrine in certain circumstances, including when the forfeiture stems from the ineffective assistance of appellate counsel. See *English*, 2013 IL 112890, ¶ 22. However, as before, even if we were to overlook defendant's forfeiture of this issue, we would find no arguable merit to his claim.

¶ 54    As stated, unless the underlying issue is meritorious, a postconviction petitioner suffers no prejudice from appellate counsel's failure to raise it on direct appeal. *Childress*, 191 Ill. 2d at 175. Accordingly, the critical inquiry is whether defendant's underlying claim of error

"would have been successful if raised on direct appeal." *Id.*

¶ 55   To be valid, a guilty plea must be voluntary and intelligent. *People v. Guzman*, 2015 IL 118749, ¶ 21, 43 N.E.3d 954. Once a guilty plea is entered and accepted, a defendant has no absolute right to withdraw it, and "must show a manifest injustice under the facts involved." *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.*

¶ 56   "Generally, due process requires that in order for a defendant to knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of a guilty plea." *Id.* ¶ 35. "A trial court's obligation to ensure that a defendant understands the direct consequences of his plea traditionally encompasses those consequences that affect the defendant's sentence and other punishment that the circuit court may impose." *Id.*

¶ 57   "[T]he decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion." *Id.* ¶ 32. "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519, 922 N.E.2d 330, 338 (2009).

¶ 58   Here, defendant contends he was misinformed regarding the viability of a charge to which he did not plead guilty, and which was dismissed. He raises no claim that he was misadvised or improperly admonished regarding the direct consequences of the two offenses to which he did plead guilty—aggravated battery with a firearm and unlawful possession of a weapon by a felon. This court has found no manifest injustice to a defendant under such circumstances. See *People v. Glover*, 2017 IL App (4th) 160586, ¶ 36, 85 N.E.3d 815 (finding the "[d]efendant's

alleged misapprehension about the possible maximum sentence for two dismissed charges [did] not render [the] defendant's plea to [a separate offense] invalid"). Additionally, for the reasons already discussed, defendant failed to allege, and the record does not reflect, that he was prejudiced by his asserted mistaken understanding of the viability of the armed violence charge. See *id.* (considering whether the defendant suffered prejudice when addressing his claim that he should be allowed to withdraw his guilty plea because of his erroneous belief as to his sentencing liability for two dismissed charges).

¶ 59　　　　Under the circumstances presented, we find it is not arguable that the trial court abused its discretion by denying defendant's amended motion to withdraw his guilty plea based on the claim that defendant's pleas were not knowing or voluntary because of his mistaken understanding of the viability of the armed violence charge. Consequently, it is also not arguable that appellate counsel was ineffective for failing to raise the issue on direct appeal. Thus, defendant's forfeiture aside, we agree with the State that his postconviction claim was frivolous and patently without merit. The court committed no error in summarily dismissing his *pro se* postconviction petition.

¶ 60　　　　　　　　　　　　　　III. CONCLUSION

¶ 61　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 62　　　　Affirmed.